Hood, *Appellant,* v. Nicholson *et al.*

Division One, February 9, 1897.

1. **Pleading, Construction of.** Courts in construing a pleading will disregard form and look at its substance, giving it such interpretation as fairly appears to have been intended by the pleader.

2.  Pleading: ASSIGNMENT.   A petition examined and *held* to allege that an equity of redemption was transferred by an assignment.

*Appeal from St. Louis City Circuit Court.*—Hon. D. D. FISHER, Judge.

AFFIRMED.

*J. M. Lewis* and *C. M. Napton* for appellant.

(1)   The ten years bar of the statute of limitations governs the remedy in this case.   Such is the law applicable to suits seeking to enforce trusts in real estate. *Ins. Co. v. Smith,* 117 Mo. 261.   (2)   The possession by Nicholson of the land claimed was that of a trustee, and will not be deemed adverse as against plaintiff unless there has been an open disavowal of the trust fully and unequivocally made known to the beneficiary. *Goodwin v. Goodwin,* 69 Mo. 617.   (3)   After the agreement set out in the bill was made between plaintiff's grantor and Nicholson, the latter became an equitable mortgagee until the end of the litigation. The staleness of a claim will not prove a valid defense when the facts by which it exists would not afford a bar in equity.   *Bollinger v. Chouteau,* 20 Mo. 89.   (4) If it be held that the petition shows that the statute began to run in 1883, to wit, at the termination of the *Farish* case, then the ten year limitation is saved by the further allegation that plaintiff brought an action in 1892 in which he suffered a nonsuit or dismissal, and this case was brought within a year thereafter.

*Frank K. Ryan* for respondents.

(1)   Plaintiff's claim, even if considered as a trust relating to real estate, is barred by the ten year clause

of the statute of limitations. R. S., sec. 6774; *Bruce v. Tilson*, 25 N. Y. 194; Wood on Limitations [2 Ed.], p. 324, note 4; *Smith v. Ricords*, 52 Mo. 581; *Ricard's Adm'r v. Watkins*, 56 Mo. 553; *Bent v. Priest*, 86 Mo. 488. (2) Plaintiff's claim, being one for which an action at law for money had and received would lie, is also barred by the five year clause of the statute of limitations. R. S., sec. 6775; *Hann v. Culver*, 73 Hun, 109; *Butler v. Johnson*, 111 N. Y. 204; *Roberts v. Ely*, 113 N. Y. 128; *Mills v. Mills*, 115 N. Y. 80. (3) The probate court had jurisdiction to try plaintiff's claim, and same should not be heard in a court of equity. R. S., 184; *Tettington v. Harker*, 58 Mo. 593; *Pearce v. Calhoun*, 59 Mo. 271; R. S., sec. 172; *French v. Stratton*, 79 Mo. 560; *Hammons v. Renfrow*, 84 Mo. 341; *Priest v. Spier*, 96 Mo. 115. (4) It appears by the amended petition herein that the assignor of plaintiff has been guilty of such laches that plaintiff is not now entitled to be heard in a court of equity. *Klein v. Vogel*, 90 Mo. 239; *Burdett v. May*, 100 Mo. 13; *State ex rel. v. West*, 68 Mo. 229; *Lennox v. Harris*, 88 Mo. 491; *Dunklin Co. v. Chouteau*, 120 Mo. 596; *Burgess v. Railroad*, 99 Mo. 508; *Reel v. Ewing*, 71 Mo. 29. (5) It appears by the bill herein that the interest claimed by plaintiff has passed by assignment of plaintiff's assignor, John S. Hood, to his assignee, Henry B. Davis. *Church Society v. Branch*, 120 Mo. 226; *Kennedy v. Siemers*, 120 Mo. 73. (6) No right of action could ever have occurred on the alleged contract set forth in plaintiff's amended petition, because such alleged contract only purports to be a promise without consideration made on a certain condition, which condition has never been performed. Angell on Limitations [6 Ed.], sec. 113; *Train v. Gold*, 5 Pick. (Mass.) 384; *Kennedy v. Siemers*, 120 Mo. 73; *Reel v. Ewing*, 71 Mo. 29.

ROBINSON, J.—This case is here on appeal by
plaintiff, from the judgment of the circuit court of the
city of St. Louis, sustaining a demurrer to the follow-.
ing bill or petition filed by plaintiff:

"I.

"Plaintiff states that defendants are the heirs at
law of one David Nicholson, who died intestate in the
city of St. Louis, on the twenty-sixth day of Novem-
ber, 1880, leaving to said heirs a large estate of the
value of $250,000, consisting of both real and personal
property.

"II.

"That on the first day of July, 1870, and prior
thereto, John S. Hood and John B. McKay were the
owners of the following real estate, to wit:

"*First.*   Lots numbered 1, 2, 3 and 4, of block
number 2, of John E. Cook's subdivision of a part of
United States survey number 1583, and containing in
the aggregate two hundred and seventy feet front on
the north line of Finney avenue by one hundred and
forty feet deep to an alley.

"*Second.*   Also lots numbered 9, 13, 14, 15, 16
and 17, on said block 2, containing an aggregate of
three hundred and twenty-five feet on the south line
of Cook avenue, by one hundred and forty feet deep
to an alley.

"*Third.*   Also a lot in said survey 1583, contain-
ing a front of fifty-five feet on the west line of Grand
avenue by one hundred and fifty feet deep to an alley,
bounded north by Cook avenue, and east by Grand
avenue.

"*Fourth.*   Also a parcel of land in said survey,
beginning at a point in the west line of Grand avenue
one hundred and five feet south from the south line of

Cook avenue, and thence south one hundred feet, thence west one hundred and fifty feet to an alley, thence north one hundred feet, and thence east one hundred and fifty feet to the point of beginning.

"*Fifth.* Also another lot in said survey, commencing at a point on the north line of Finney avenue one hundred and sixty-five feet from the west line of Grand avenue, and thence west along the north line of Finney avenue eighty-four and ten hundredths feet, thence northwardly at right angles with Finney avenue one hundred and forty-five feet to an alley, thence east along said alley seventy-one and one fourth feet to another alley in the rear of the two lots last above described, thence south along the west side of the last named alley one hundred and forty-five feet to the place of beginning.

"*Sixth.* And also lots 22, 23, 24, 25, 26, 27, 28, and 29, in block 6, in Daniel D. Page's second western addition to the city of St. Louis, all in the city of St. Louis and state of Missouri.

## "III.

"Plaintiff alleges that at said time said land was of the value of about $75,000, and said McKay and Hood, in the month of July, 1870, borrowed from one Thomas Primrose, of Aberdeen, Scotland, the sum of $6,500, through the agency of the said David Nicholson, and to secure the repayment of the said sum and interest at the rate of ten per cent per annum, they executed a deed of trust to said Nicholson as trustee, to secure the notes for said sum. And about the month of January, 1871, said Hood and McKay borrowed from said Thomas Primrose, through the agency of said David Nicholson, the further sum of $11,000, and to secure payment thereof and the interest thereon, they executed to said Nicholson a second deed of trust upon said property.

"IV.

"Plaintiff further alleges that the interest on said loans, aggregating the yearly sum of $1,640, and also all taxes on said lands were paid by said Hood and McKay from the date of said loans down to about the month of October, 1877, at about which date they suspended further payment for the reasons hereinafter stated.

"V.

"Plaintiff further alleges that the reason why said Hood and McKay suspended payment of said interest was as follows:

"That said Hood and McKay held said lands or the greater portion thereof by conveyance from one John E. Cook, and in or about the midsummer of 1875, one Farish under a claim of paramount title brought in the circuit court of St. Louis aforesaid, against said Cook, an action of ejectment to recover the same and other lands; said action involving the location of what was known as the Calve tract and consequently the title of said Hood and McKay and also that of Nicholson as aforesaid; which action, after trial in said circuit court, was removed by successive appeals into the St. Louis court of appeals and to the supreme court of Missouri; and was finally decided there in June, 1883, but the question involved concerning the title to said lands being as to the validity of the location known as the Calve tract, being survey 1583, was further contested by said Farish and others and was never finally settled until July 30, 1888, when by a decision of the commissioner of the general land office of the United States, at Washington, D. C., the title of said Cook and of Hood and McKay and all others claiming under them was fully confirmed and vindicated and set at rest.

"Plaintiff alleges that during and throughout the pendency of said action of ejectment said Hood and McKay were defendants in interest; and as such were compelled for their own protection to aid and contribute toward carrying on the defense; that they were subjected to more than ten years of annoying, expensive, and vexatious litigation; that their necessary expenditure in and about defending said action was so great as to seriously embarrass them financially, and they became for the time unable to meet the accruing interest upon the Primrose notes aforesaid; that said David Nicholson and Hood and McKay had the utmost confidence in the ultimate success of the defense in said suit and the maintenance of their title, and such being the status in the year 1877, as aforesaid, and in the month of October thereof, the said Hood and McKay entered into a contract and agreement with said David Nicholson, by the terms of which the said Hood and McKay executed to one Peter Nicholson a third deed of trust upon said land to secure to said David Nicholson the notes of Hood and McKay for the sum of $3,000, said Hood and McKay giving to said David Nicholson their notes for said amount. And thereupon, the said David Nicholson agreed with said Hood and McKay, in consideration of said notes, to pay the interest upon the Primrose notes until the end of the litigation which involved the title to said land. Said David Nicholson was further induced to enter into said contract by reason of the fact that said lands were the only security he had for the loan of $17,500, which he had made for Thomas Primrose, and he was under obligations to see that the title of Hood and McKay was held valid.

"VI.

"And plaintiff alleges that said Hood and McKay became involved financially about the year 1879, and.

while engaged in business as John S. Hood & Company were compelled to make an assignment for the benefit of creditors (said assignment having been made by said firm of John S. Hood & Company to one Henry B. Davis, assignee), and thereupon the said Nicholson in order to prevent said lands becoming complicated in the affairs of said Hood and McKay, or of John S. Hood & Company, agreed with them that he would foreclose and sell out said lands under said third deed of trust aforesaid, and that he would buy said lands in his own name and hold them in his own name until the end of the litigation aforesaid as trustee for said Hood and McKay under the agreement to pay the interest on the Primrose notes, until the end of the litigation, the understanding and agreement between said Nicholson and said Hood and McKay being that if the litigation affecting the title to said lands resulted favorably to defendants, then said Nicholson was to allow said Hood and McKay to redeem said lands upon payment of the principal and interest due on the Primrose notes upon the final and favorable termination of all controversies as to the title to said lands.

"Pursuant to said agreement said land was advertised and sold under said third deed of trust, on the fifteenth day of June, 1880, and at said sale was bought in by said David Nicholson, in pursuance of the agreement aforesaid, and he continued to hold said land and the title thereto in his own name from and after said date up to the time of his death, which occurred on the twenty-sixth day of November, 1880, and during all said time he carried out said agreement in perfect good faith and held said lands as trustee in fact, although apparently owning the whole absolutely.

"And plaintiffs allege that the two prior deeds of trust, given to secure the Primrose notes, have never been foreclosed, the said Nicholson assuming said in-

debtedness and taking said property as aforesaid in his own name.

### "VII.

"Plaintiff alleges that after the death of said David Nicholson, his administrator secured an order from the probate court of the city of St. Louis, where his estate was being administered, for the sale of all said real estate to pay debts, and more particularly the debts due Thomas Primrose, which said Nicholson had assumed when he took said land in his own name, as aforesaid; and thereupon said administrator proceeded to sell, and did sell, all of said property to divers and sundry persons, whose names are unknown to plaintiff, for a large sum of money, to wit, for the sum of $100,000, which sum was converted and turned into said estate of David Nicholson. That said Hood, on and before any such sale, notified said administrator that Hood and McKay were the equitable owners of said property subject to the incumbrance aforesaid, and that it was their right to redeem said property after the final decision of the cause involving the title as aforesaid, and that they would hold the estate of said David Nicholson for his agreement aforesaid, but said administrator, with intent to defraud plaintiff, repudiated said agreement of said Nicholson, and in fraud of plaintiff's rights, treated said property as though it belonged absolutely to the estate of said Nicholson, and it was long prior to the year 1888, as aforesaid, with intent to defraud said plaintiff, sold by said administrator to divers and sundry persons, and the proceeds fraudulently converted and turned into the estate of said Nicholson as aforesaid.

### "VIII.

"Plaintiff alleges that in the year 1888, at the time of the final decision of said cause involving the title to

said lands, the said Primrose mortgages, together with the accrued interest thereon, amounted to about the sum of $33,900, and the said real estate so mortgaged, at said time, was of the value of $250,000, and at said date said Hood and McKay were entitled to redeem said lands by the payment of said incumbrance according to their agreement with said David Nicholson, hereinbefore mentioned; but owing to the prior death of said Nicholson, and to the repudiation of said agreement by his administrator, and to the prior sale of said lands to divers and sundry persons as aforesaid, and to the fact that said litigation had not then ended, such redemption became impracticable and non-enforcible by said Hood and McKay; and the equitable rights of said Hood and McKay in the premises did not become enforcible against said David Nicholson or his estate, and did not mature until the year 1888, as aforesaid, and until more than two years after administration was taken out on said estate and notice thereof published.

"IX.

"Plaintiff alleges that during the year 1892 he engaged the services of counsel learned in the law to institute suit in the proper courts to vindicate his rights and enforce such obligations as he was entitled to in the premises, and his said counsel brought suit in the United States circuit court for the eastern division of the eastern district of Missouri, to which action the following persons were made defendants, to wit: Peter Nicholson, Frank K. Ryan, John F. Tracy, and a large number of persons who were purchasers of the land at the sale of said administrator aforesaid; the purpose and object of said action being to redeem said land from the mortgages aforesaid and for general relief. But plaintiff alleges that his said counsel mistook the rem-

edy in the premises, and owing to defective pleading said cause was finally dismissed about the month of April, 1893; and plaintiff has been ever diligent to seek and maintain his rights in the premises, but for the reasons aforesaid and the delay occasioned by the litigation aforesaid, and the fact that the estate of said Nicholson was only finally settled in September, 1890, and for divers and sundry other good and sufficient reasons, the plaintiff has been unable to seek proper redress until the filing of this suit.

## "X.

"Plaintiff alleges that in the year 1874, said Hood and McKay owned together the land hereinbefore described, and in said year they agreed upon a division of said lands, and the said McKay and his wife conveyed by deed fully executed and recorded to said John S. Hood, all his right, title, and interest in and to all the real estate hereinbefore particularly described in subdivisions 1, 2, 3, 4, and 5, of the description hereinbefore set out; said Hood at the same time conveying to said McKay all his interest in the other lands described in subdivision 6 of the description as theretofore owned jointly by them.

## "XI.

"And plaintiff alleges that the said John S. Hood and his wife, Mary E. Hood, by their deed, duly executed and recorded, bargained, sold, and conveyed to plaintiff, for a valuable consideration, all his and their right, title and interest in and to said lands and real estate, and all his right and equity of redemption therein, and all his right and title under and by virtue of his said agreement with said David Nicholson, and plaintiff is now the owner thereof, and entitled to all

the rights of the said John S. Hood in and to said premises, and under said contracts and agreements.

## "XII.

"Plaintiff alleges that at his death the said David Nicholson left surviving him the following heirs: his widow, Jane Nicholson, his son, David Nicholson, and his daughter, Margaret Tracy, and also other children who have since died while minors and without issue.

"And upon the final distribution of his estate, the personal part thereof was divided as follows, to wit: to Jane Nicholson, David Nicholson, and Margaret Tracy, each the sum of $22,359.19 in cash. And said heirs also inherited from said David Nicholson, in equal portions of one third each, the following described real estate, situated, lying, and being in the city of St. Louis, and state of Missouri, as follows:

"1. In city block 113, of Chouteau and Lucas' addition, being fifty-two feet, four and one half inches on Broadway by one hundred and thirty-five feet deep, and bounded north by Gummersbach, east by Broadway, and south by Walnut street, which together with the improvements thereon is of the value of $150,000.

"2. Also in city block 1326, a lot seventy feet front on Lafayette avenue by one hundred and thirty-five feet deep, situated on what is known as Nicholson Place, and bounded north by Lafayette avenue, east by other property of said Nicholson, and south by same, and west by Nagel, of the value of $10,000.

"3. Also in city block number 2293, being one hundred feet front on Grand avenue by one hundred and five feet deep, bounded north by King, east by Grand avenue, south by Bock, and west by an alley, and of the value of $20,000.

"4. Also a large quantity of other lots and lands in said city, situated on said Nicholson Place, and in

Nicholson addition and Compton Hill, of the value of $100,000.

## "XIII.

"Wherefore plaintiff states that his said grantor, John S. Hood, in the year 1888, became entitled to redeem said land as against said David Nicholson, by paying the said Primrose mortgages or deeds of trust, and thereupon became entitled to said land; and that this plaintiff is now entitled to an action against the heirs of said Nicholson for a sum equal to the difference between the amount of said mortgages and the accrued interest thereon in the year 1888 and the true value of the land at that time.

## "XIV.

"Plaintiff states that he is without remedy at law in the premises, and that the matters and things herein complained of are specially cognizable in a court of equity, and he therefore prays the equitable interposition and for equitable relief from this court.

## "XV.

"Wherefore plaintiff prays the court to grant him a decree as follows:

"1.   Declaring that said David Nicholson held said land at the time of his death in trust for the plaintiff's grantor aforesaid.

"2.   That an account be taken to ascertain the amount of said mortgages and accrued interest in the year 1888, to wit: on the thirtieth day of July, 1888.

"That an account and ascertainment be held and had as to the true value of said lands, conveyed by all said Primrose mortgages, and as to the proportionate part thereof properly chargeable to the land so conveyed by John S. Hood to plaintiff.

"That a judgment be rendered in favor of plaintiff for an amount equal to the difference at that date, between the amount of said mortgages chargeable against the property so conveyed to plaintiff and the true value of the property so incumbered.

"That said judgment when so rendered be declared a lien upon the real property hereinbefore described as inherited by defendants from said David Nicholson, and that said real property or so much thereof as may be necessary be sold to pay such judgment, and for such other and further relief as to the court may seem just and proper."

Several grounds of demurrer were assigned by defendants to the bill, but for the sake of the disposition of the case only the one will be considered "that it appears by said bill that the interest claimed by plaintiff in the land described in said petition passed by assignment of plaintiff's assignor, John S. Hood, to his assignee, Henry B. Davis."

It is urged now by appellant that the allegations of the bill do not show that John S. Hood ever conveyed his equity of redemption in the lands named to the assignee Davis, and that what is stated therein regarding the matter of assignment is "mere matter of inducement leading up to the reason why Nicholson sold under the third deed of trust and entered into the agreement on which this action is based."

While there is no explicit allegation in the bill that John S. Hood & Company conveyed all their interest in the land to Davis as assignee, and while the court in construing pleadings should lean toward rather than against the pleader, in obedience to the modern rule of giving to him the benefit of every reasonable intendment and presumption where the pleading is assailed on demurrer, we can not reasonably infer or conclude from the language of the bill

other than that the land involved in this controversy went into the hands of the assignee Davis in the year 1879, else what use for and what meaning could he give to the language of the bill that plaintiff now says was used as a "mere matter of inducement leading up to the reason why Nicholson sold under the last deed of trust made to him by Hood and Company?"

If the land was not included in the assignment why the necessity of and what meaning could be given to the allegation of the bill "and thereupon the said Nicholson in order to prevent said lands becoming complicated in the affairs of said Hood and McKay or John S. Hood & Company agreed with them [one of plaintiff's assignors] that he would foreclose and sell out said lands under his said third deed of trust aforesaid, and that he would buy said lands in his own name and hold them in his own name until the end of the litigation aforesaid an trustee for said Hood & McKay under the agreement to pay interest on the Primrose notes," etc.? If the land was not involved, why mention the fact of the assignment at all, and why a sale made to avoid it?

In the absence of qualifying words the assignment mentioned will be held and treated as a general assignment; and that under it all the partnership interest in the lands, whether of the fee or the equity of redemption therein, passed to the assignee, is the only fair and reasonable inference to be drawn from the language of the bill.

Courts to prevent delays and to avoid hardships, will disregard all defects in pleadings which do not affect the substantial rights of the adverse party, and will disregard form and look to the substance, and at all times give such interpretation to language used as fairly appears to have been intended by its author; yet it is not authorized to rob, by construction, language

of its plain and obvious meaning, or of the fair, reasonable and obvious conclusion to be deduced therefrom, to enable its author to relieve himself from a position of embarrassment where by its use he has voluntarily placed himself.

The court is of the opinion that the only fair and reasonable inference to be drawn from the language of the petition is that the equity of redemption of the land in suit being a part of the partnership assets of J. S. Hood & Company, in 1879, passed by assignment to Davis as assignee and no interest therein is now shown in plaintiff. The judgment of the circuit court sustaining the demurrer filed therein is affirmed. All concur.