WEBB & KINNE, Appellant, v. E. STEINER et al., Respondents.

Kansas City Court of Appeals, May 8, 1905.

1. TRIAL AND APPELLATE PRACTICE: Evidence: Instruction: Verdict. Where the evidence tends to support the view of each party and the instructions clearly present the theories of each party, the appellate court cannot interfere with the verdict, especially where the trial court has refused to do so.

2. SALES: Partnership: Rescission: Instruction. Where one sells a stock of goods and later on it develops that he has an unmentioned partner, such fact will not warrant the vendee in rescinding the contract, and an instruction permitting such rescission is properly refused.

3. ———: Earnest Money: Recovery of. Where a party has no cause for refusing to carry out his contract for exchanging property, he cannot recover money advanced in part performance of a contract.

4. MONEY HAD AND RECEIVED: Recovery of. On the facts in the record it is held plaintiffs were entitled to recovery for money had and received.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*Wm. Henry*, *J. Allen Prewitt* and *Bremmerman & Heidelberg* for appellants.

(1) The first count of plaintiff's petition stated a good cause of action. Under the evidence plaintiffs should have recovered on this count, and the court erred in not so instructing the jury. Winningham v. Faucher, 52 Mo. App. 458; Lathrop v. Mayer, 86 Mo. App. 355-362; York v. Bank, 105 Mo. App. 127; Richardson v. Drug Co., 92 Mo. App. 515; Clark v. Bank, 57 Mo. App. 277; Jacoby v. O'Hearne, 32 Mo. App. 566; Thomas v. Ramsey, 47 Mo. App. 85; Koopman v. Cahorn, 47 Mo. App. 357-362; R. S. 1899, sec. 604 and 605; Nelson v. Hirsh, 102 Mo. App. 515, cases cited; Rickey v. Tenbrook, 63 Mo. 563; Logan v. Carroll, 72 Mo. App. 614; Anderson v. Frank, 45 Mo. App. 482; Bank v. Ragsdale, 17 Mo. 186; Lumber Co. v. Lumber Co., 51 Mo. App. 555-561; Life Assn. v. Cravens, 60 Mo. 388. (2) There being no allegations in the answer that bring this case within the rule as to the measure of damages in such cases and no evidence whatever of any such damages, the plaintiffs' peremptory instruction should have been given. Hendley v. Refinery Co., 79 S. W. 1163, and cases cited; May v. Crawford, 150 Mo. 505-527; Mosby et al. v. Commission Co., 91 Mo. App. 500; Gwin v. Smurr, 49 Mo. App. 361; Marr v. Bunker, 92 Mo. App. 651; McAdow v. Ross, 53 Mo. 199; Gordon v. Bruner, 49 Mo. 570; Wagner v. Dette, 2 Mo. App. 261; Herman v. McNamara, 77 Mo. App. 1; Bank v. Armstrong, 62 Mo. 65; Pattison on Code Pl., p. 271, art. 527. (3) Defendant's answer, however, cannot be treated as a counterclaim, since they do not ask for an affirmative relief. R. S. 1899, sec. 604; R. S. 1899, sec. 4499; Pullis v. Pullis, 157 Mo. 588; Heman v. McNamara, 77 Mo. App. 1-17 ante; Emery v. Railroad, 77 Mo. 339; Hitchcock v. Baughan, 44 Mo. App. 42; Hitchcock v. Baughan, 36 Mo. App. 216; Marshall

v. Armstrong, 79 S. W. 1161; Henderson v. Davis, 74 Mo. App. 5; Saddlery Co. v. Bullock, 86 Mo. App. 93.

*James E. Goodrich* and *W. S. Herndon* for respondent.

(1) Plaintiff's in each count of their petition asked for a judgment for the $1,000.00 paid by them and interest. As each count was a separate statement of the same cause of action, a general verdict was sufficient. Owens v. Railroad, 58 Mo. 386; Moffett v. Turner, 23 Mo. App. 194; Silcox v. McKinney, 64 Mo. App. 330. (2) As the answer of the defendant asked no affirmative relief and the evidence offered which tended to prove that defendants had not received the amount they would have received if the trade had gone through, by more than $1,000.00, was objected to by the plaintiffs as immaterial, and the objection sustained, there could be no other issue submitted to the jury than to find either for the plaintiff or defendant and the verdict was responsive to the issues. 3 Graham & Waterman on New Trials, 1377; Mfg. Co. v. Severance, 51 Mo. App. 262, and cases cited; Kenney v. Railroad Co., 79 Mo. App. 209. (3) Plaintiffs brought their suit and tried their case in the lower court on the theory of fraudulent misrepresentations on the part of the defendant, that they were deceived thereby, and therefore they had the right to repudiate the contract, and recover the amount paid in full, or nothing, and their objections to the evidence, which was sustained by the trial court, shows that that court sustained them in this view, and that both plaintiffs and defendants adopted that theory in the trial. Appellants cannot now be heard to complain or ask to have the case determined upon upon another theory. Hall v. Goodnight, 138 Mo. 576; Guntly v. Stead, 77 Mo. App. 163; Johnson v. Hutchison, 81 Mo. App. 299; Phelps v. Salisbury, 161 Mo. 1; Slater v. Knights and

Ladies of Honor, 88 Mo. App. 177; Hill v. Drug Co., 140 Mo. 433; Pope v. Ramsey, 78 Mo. App. 157; Stewart v. Outhwait, 141 Mo. 562; Long v. Long, 141 Mo. 352. (4) A deposit or part payment cannot be recovered back by the vendee, when the sale goes off by his default, as that would be permitting him to take advantage of his own wrong, and would do away with the sanctity of a contract. Ludwig v. Knippinger, 13 Mo. App. 593; Crews v. Garneau, 14 Mo. App. 505.

ELLISON, J.—Plaintiffs brought this action for the sum of one thousand dollars and set it forth in the petition of two counts—the first for money had and received; and the second charging a fraudulent contract for the transfer of a stock of goods to plaintiffs upon which they paid one thousand dollars, and then, upon discovery of the fraud, rescinded and demanded the return of the money, which defendants refused. The judgment in the trial court was for the defendants. The plaintiffs and defendants made, or attempted to make, an exchange of properties. The plaintiffs owning mill property in Lee's Summit, and the defendants a stock of merchandise in Cameron. Their contract was put in writing and is as follows:

"By this agreement made this the third day of February, 1903, by and between E. Steiner of Cameron, Mo., party of the first part, and Webb & Kinne of Lee's Summit, Mo., parties of the second part.

"Witnesseth: That first party has this day bargained and sold to second parties the stock of merchandise and store fixtures, located in the Freeman building, in Cameron, Missouri; the fixtures as per list hereto attached to be taken at the sum of ($350), three hundred and fifty dollars. The stock of merchandise to be invoiced as per the following cost mark on said goods, viz.:

| C | a | E | L | V | ℰ | Γ | # | U | ℮ |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 |

and where any goods are not marked with said mark, price to be agreed upon by both parties. In payment for such stock and fixtures said first party is to receive from said parties, Warranty Deed, for six lots in Lee's Summit, Missouri, on which is located the Lee's Summit mills, subject to a mortgage of ($600) six hundred dollars, the equity in said mill property to be taken at the sum of five thousand dollars ($5,000) balance above said five thousand dollars ($5,000) that said stock and fixtures invoice, to be paid in cash at the completion of the invoice, less $100 paid at the signing of this agreement and (the sum of $900 before the commencement of the invoice) receipt of which is hereby acknowledged. Said stock of merchandise are free and clear.

"Deeds to be general warranty, with abstract showing good title. Should said stock not invoice the sum of $6,000 then first party to pay second party the difference to be guaranteed by the bank. Invoice to be commenced on or before February 9, 1903, and completed as soon as practical.

"It is agreed that second parties are to have the use of said mill free of rent until March 1, 1903."

The cause was tried with the aid of a jury under a number of instructions given at the instance of either party, in which the theories upon which the case was heard are set forth with clearness. The plaintiffs charge that defendants had purposely put the "cost mark" on the merchandise above its cost for the purpose of trading or selling it, and to deceive and defraud whoever might be the purchaser. The defendants denied this and insisted that no representations were made as to what was meant by the figures and characters set out in the contract as "cost mark." That plaintiffs went through the stock thoroughly and that they assisted in its invoice and did not ask, receive or rely upon any assurance of the

defendants as to the original cost of the goods. It appears that plaintiffs went to Cameron and examined the stock of merchandise. That it was not known to either party just what it would invoice and hence the stipulations on that head in the contract.

The evidence showed the payment of the one hundred dollars and the nine hundred dollars provided for in the contract. There was evidence tending to show that plaintiffs considering themselves deceived and defrauded at about the close of the invoice refused further dealing with defendants, left them in sole possession of the goods, offered to rescind and demanded back the money they had paid—which demand was refused by the defendants. The court refused to declare that the contract was a "warranty" by defendants that the goods cost the sum indicated by the "cost mark" in the contract. We are of the opinion that the contract is sufficiently indefinite and ambiguous as to what was meant by the expression, "the stock of merchandise to be invoiced as per the following cost mark on said goods" to permit evidence to be heard, and that the court, as just said, properly refused plaintiffs' request for an instruction stating that such cost mark was a "warranty as a matter of law."

The theory of defendants, advanced here, is that each party put a trading valuation on each of their properties, and that each so understood it. That plaintiffs valued their mill at a large sum more than they had offered to sell it to others. That they examined the stock, noticed the "cost mark" thereon and agreed to accept such mark as the trade valuation. That it was at no time represented by defendants that such mark represented what the goods had actually cost at wholesale. And the plaintiffs themselves asked instructions, which were given by the court, wherein was submitted the question that if defendants had put on a fictitious cost mark with a view of defrauding a buyer by induc-

ing him to believe it represented the actual cost, and that the plaintiffs were not informed of the actual cost, and entered into the contract in ignorance thereof, in the belief that it did express the actual wholesale cost, then it was a fraud upon them and the verdict should be in their favor.

There was evidence tending to support the view of each party, and we cannot interfere with the verdict, especially since the trial court refused to disturb it.

Other branches of the case will be disposed of in the same way. There was a question as to representations made by defendants as to the amount in value of jewelry in the stock. It seems that it was considered undesirable stock and plaintiffs charged that defendants, with a view to cheating them, underestimated the amount of it. But this was submitted in an instruction offered by plaintiffs, and the finding was against them.

So, it seems, that a part of the goods were not marked, and plaintiffs contended that they and defendants agreed that defendants should fix a fair and reasonable price for these at which they were to be invoiced, and that they refused to do so, although requested by plaintiffs. An instruction offered by plaintiff embodied such hypothesis and directed the jury to find for plaintiffs, if on that account, they rescinded the contract.

Other instructions offered by plaintiffs were given on their right to rescind if defendants had been guilty of fraud.

Of the instructions given for defendants, they were all qualified by the limitation that the finding could not be for them if they had been guilty of fraud as charged by plaintiffs and as explained in the instructions given for plaintiffs. On all questions made by plaintiffs, and on all theories advanced by them at the trial, the court clearly instructed the jury, except (as above stated) as to the contract being a warranty that the cost mark rep-

resented the wholesale price of the goods, and the further exception now to be considered.

It seems that the negotiations leading up to the contract were had with defendant Steiner and the contract itself was signed by him and not by defendant DeSteiger. It afterwards developed that they were partners and owned the goods in partnership, though the business of retailing was conducted under the name of defendant Steiner. Plaintiffs suggested at the trial, and offered instruction, which was refused, to the effect that, if Steiner was not the sole owner and that DeSteiger had a large interest therein as a partner, and on that account plaintiffs offered to rescind, the verdict should be for plaintiffs. We think the instruction was properly disallowed. The evidence shows that Steiner was the owner so far as a right to convey title to these plaintiffs was concerned. The property was in his name and the business was so conducted. DeSteiger's interest was not a matter which could affect plaintiffs.

Under the theory upon which the case was tried by the plaintiffs, it can make no difference that defendants have the goods and the sum of one thousand dollars paid thereon by plaintiffs. The verdict of the jury establishes that plaintiffs had no cause to refuse to carry out the exchange of properties. In such cases earnest money cannot be recovered back. [Crews v. Garneau, 14 Mo. App. 505.] Where a party advances money in part performance of a contract and then refuses to complete it, the other party being ready and willing, he cannot recover back the money so advanced. [Ketchum v. Evertson, 13 John. 359; Green v. Green, 9 Cowen 46; Davis v. Hall, 52 Md. 673; Fuller v. Hubbard, 6 Cowen 13.]

Plaintiffs have endeavored to show error and injustice in the judgment arising from the pleading and the question of counterclaim, recoupment and set-off, not being presented by the answer has been called to our

attention. And so it is urged that, at all events, plaintiffs should have been permitted to recover on the first count in the petition for money had and received. What we have already said really disposes of these suggestions. The case as presented on issues invited by plaintiffs has been determined against them. This puts them in position of parties at fault. Under the facts established by the verdict, they should have carried out the contract; and having failed to do so, they must fail on their action.

We have examined the record entire and fail to find any authority to justify our interference and hence we affirm the judgment. All concur.