J. B. QUIGLEY, W. A. LATTIMER, AUGUST HE-
MAN and H. A. VROOMAN, Respondents, v. M.
KING, Appellant.

Springfield Court of Appeals, June 27, 1914.

1. ACTIONS: Contracts: Cannot Sue on Express and Recover on
Implied: Judgment and Pleadings Must Conform, One can-
not sue on one cause of action and recover on another and
where an express contract is pleaded plaintiff is not permitted
to recover on one implied.

2. PLEADINGS: Assailing After Verdict: Intendments Indulged.
Every reasonable intendment after verdict is brought to favor
pleadings assailed.

3. PLEADINGS: Option for Purchase: Breach: Action to Recover
Payments. Action to recover payments made on option for
purchase of land on account of default of vendor. Though the
petition standing alone might be construed as stating a cause
of action for money had and received, and the allegations as
to the contract might be treated as surplusage; yet such con-
struction is precluded where in reply plaintiffs plead that the
contract has "not ceased and determined" and that defendant
is estopped from pleading that it "has ceased and determined."

4. PLEADINGS: Construction by Court: Protection of Parties.
Parties litigant are to be protected by the court when it con-
strues pleadings to secure them against being misled. (Citing
section 1865, R. S. 1909).

5. PLEADINGS: Petition: Determines Character of Action. The
character of an action is determined from the averments of
the petition.

6. INSTRUCTIONS: Pleadings Must be in Harmony: Theory of
Case. Where the pleadings and evidence treated a cause of
action as one for a breach of an express contract, error was
committed in giving a peremptory instruction on the theory
that the action was *indebitatus assumpsit.*

7. CONTRACTS: Sale of Land: Options: Construction of Con-
tract. Option contract for purchase of certain land examined
and *held* unilateral purely, wherein the land owner obligated
himself to convey on certain conditions, the proposed pur-
chasers being under no obligation to carry out the contract,
having a right to abandon same at any time without incurring

Quigley v. King.

any liability. The owner could not recover for breach of contract.

8. **SALES OF REAL ESTATE: Contract: Option: Action to Recover on Breach: Prerequisites.** In order that plaintiffs may recover money paid on an option of purchase of certain land or damages based on the enhanced value of the land, they must show a readiness and willingness on their part to carry out the contract and a refusal of defendant to make a deed conveying good title.

9. **REAL ESTATE: Purchase of: Recovery of Payments Made on Purchase: What Must be Shown.** In order that a purchaser may recover the part of the purchase price paid for land, he must show that he was ready, willing and able and offered to perform his part of the contract and that the vendor refused; or in case the proposed purchaser failed to perform some part of the contract in order that he may recover any of the purchase price already paid, it must appear that the proposed vendor treated such failure to perform as a forfeiture and rescission of the contract.

10. **VENDOR AND VENDEE: Breach of Purchase Contract: Remedies.** Where plaintiffs, holders of a land option, are able to show that they were ready, willing and able and that they offered to perform their part of the contract and defendant refused to carry out his part thereof, or if plaintiffs can show that although they did not fully perform their part of the contract or offer to perform same, that defendant treated such non-performance as a rescission plaintiffs should be allowed to recover for money had and received and defendants should recover for any damages suffered by him because of plaintiffs' default. But if it is shown that defendant was ready, willing and able to perform his part of the contract notwithstanding plaintiffs' breach, plaintiffs should not recover either for breach of contract or for money had and received.

11. **PLEADINGS: Action on Option Contract for Real Estate Purchase: Amendments.** In an action for damages for breach of contract of purchase of land where plaintiffs sought to recover certain payments they had made on the purchase price, they may be permitted to amend their petition so as to make it clearly state a cause of action as for money had and received.

Appeal from Greene Circuit Court.—*Hon. Arch A. Johnson*, Judge.

REVERSED AND REMANDED.

*Fred Stewart* and *G. A. Watson* for appellant.

(1) The court erred in refusing to submit the counterclaim of the defendant to the jury. Norris v. Letchworth, 140 Mo. App. 19; Norris v. Letchworth, 152 S. W. par. 421; and cases cited by court. (2) The court erred in directing the jury to find a specific sum as interest, but should have left the calculation to the jury. Corbett v. Mooney, 84 Mo. App. 645; Cates v. Nickell, 42 Mo. 169; Burghart v. Brown, 60 Mo. 24; Johnson v. Grayson, 130 S. W. 673, l. c. 680; Schilling v. Speck, 26 Mo. 489.

*J. S. Clark* and *Mann, Todd & Mann* for respondents.

(1) The action of the court in refusing to submit the counterclaim was correct: (a) Because the option contract provides as follows: "If this option is not exercised by said parties or their assigns on or before eighteen months from the date hereof, then this contract shall be void, and no liability shall attach by this contract to either the first or second parties." This provision in the option is an absolute answer to appellant's contention that it was error not to have submitted his counterclaim to the jury. (b) The counterclaim is based upon two grounds: that respondent had filed a *lis pendens* against plaintiff's property at the time this suit was first instituted, and that appellant had been thereby damaged in the sum of $1500. There was not a syllable of evidence in the case, in fact no question was asked any witness tending to show that by the filing of *lis pendens* appellant had been in any way damaged. Parsons v. Kelso, 141 Mo. App. 369; Ives v. Kimlin, 140 Mo. App. 293; Montgomery v. Wise, 138 Mo. App. 176. (2) This was, in effect, a suit for money had and received. The petition is not as artistically drawn as might be desired. However, after verdict it is sufficient. State ex rel. Gardner v.

Webber, 164 S. W. l. c. 186. (3) That under the facts shown in evidence in this case respondents are entitled to recover from appellant as for money had and received is well established. Norris v. Letchworth, 140 Mo. App. 19; Norris v. Lee, 167 Mo. App. 563.

STATEMENT.—This case grew out of a promotion scheme. The plaintiffs (respondents) sued as assignees of an option contract, the appellant, a landowner in Douglass county from which the case went on change of venue to Greene county.

On April 14, 1908, appellant King and his wife, as parties of the first part, entered into a written contract with Reynolds and Miller, as parties of the second part, whereby they agreed as follows: "Witnesseth: That the said parties of the first part for and in consideration of the sum of one dollar to them paid by the second parties, or their assigns, the receipt of which is hereby acknowledged and the further sum of eight thousand dollars to be paid by said parties, or their assigns, hereby covenant and agree that they will, upon payment of the said sum of eight thousand dollars, and demand made, convey to said second parties, or their assigns, by good and sufficient warranty deed in which his wife shall join, the following described lots, tracts or parcels of land lying and being situated in the county of Douglass and State of Missouri, to-wit: The northwest quarter of the southwest quarter and 30 acres, more or less, off the southwest quarter of the northwest quarter, being all of said forty-acre tract except the land heretofore deeded to J. H. Murray and the southeast quarter of the northwest quarter, except two and one-half acres, more or less, heretofore deed to J. H. Murray, and except the southwest quarter of the southeast quarter of the northwest quarter reserved, all in Section 11, Township 26, Range 16.

"It is further agreed and understood between the parties hereto that if the said second parties do not make a payment of one thousand dollars within six months and a second payment of one thousand dollars within twelve months from this date, said contract shall cease and determine, and this contract shall be delivered to said parties of the first part.

"On demand the owner will furnish abstract showing good title. If this option is not exercised by said parties, or their assigns, on or before eighteen months from the date hereof, then this contract shall be void, and no liability shall attach by this contract to either the first or second party."

It is alleged in the petition, and proved, that this contract was on June 30, 1908, assigned by Reynolds and Miller to the Kansas City, Ozarks and Southern Railway Company, and by that company on July 18, 1908, assigned to the Parker-McIntosh Land Company, which, in turn (by authority of the board of directors in August, 1909), on September 22, 1909, assigned the contract to J. B. Quigley as trustee for his co-plaintiffs herein.

The petition avers that plaintiffs as legal holders and assignees of the contract fully complied with all its terms on their part, and paid defendant King $1020 of the purchase price and tendered the balance in the sum of $6990, but that defendant wholly failed and refused to make and deliver a warranty deed to said land conveying good title thereto, and to furnish plaintiffs an abstract showing good title to said land. Plaintiffs allege that they have at all times been ready to pay the balance of the purchase price to the defendant and have been ready, willing and anxious to consummate the contract, and that defendant has failed to carry out his part of the contract, or to return to plaintiffs said purchase money. Wherefore judgment is asked for $1020 with interest. For a second count, the same substantive facts are averred, with the fur-

ther allegation that plaintiff before the expiration of the eighteen months made demand of defendant to furnish an abstract of title to said land and a good and sufficient warranty deed conveying same to them, but that defendant refused, etc.; that since the contract in question was executed, because of the construction of a railroad contiguous to the land, its value was increased to $20,000, and that because of defendant's default plaintiffs have been damaged in the sum of $12,000 for which judgment is asked. The contract was, by reference, made a part of the petition, and was attached thereto.

The answer avers that plaintiffs and their assignors committed a breach of said option contract on April 14, 1909, and that, by its terms, it thereby "ceased and determined." Defendant denies that he failed or refused to furnish an abstract and deed, but avers that although no demand was made as the contract requires he did tender to plaintiff Quigley an abstract and deed and demanded the balance of the purchase money and payment was refused. Defendant denies that any tender of the purchase money was ever made. For a second count, the answer proceeds along the same line, averring that defendant was ready, willing and anxious at all times to carry out the provisions of the contract and never at any time refused to comply with the same.

Plaintiffs for reply admit that by the terms of the contract $1000 was to be paid within six months from date thereof, and that $1000 was to be paid within twelve months from date thereof, and that on failure to pay said amounts within the time specified the contract was to "cease and determine," and admit that said sums were not so paid, but state that on August 29, 1908, and within the first six months plaintiffs at the instance and request of the defendant paid him the sum of $500 as part of the purchase price for the land, and that defendant at the time waived payment

of the balance due within said six months; that in the year 1910, after the time agreed upon for the second payment and after the time for said contract to "cease and determine," the plaintiffs at the special instance and request of the defendant paid him the sum of $520, taking his receipt therefor which recited that said sums were received for payment on the purchase price of the land described in the option contract; and that defendant is now estopped by reason of having so received said sums of money as the purchase money for said land under said contract to say that said contract had become void and "ceased and determined" without first returning said sums of money so received to plaintiffs and placing them in *statu quo*.

Plaintiffs offered in evidence the option contract, and showed the different assignments, and then introduced the following receipt:

"$520.00                    Ava, Missouri, Aug. 2nd, 1909.

"Received of Heman, Vrooman, Lattimer and Quigley the sum of $520 for part of purchase price on option on my land which expires in October, 1909, and which makes $1020 paid to me in all, and leaving a balance due on said property of $6980.

"M. KING,"

Plaintiff Heman testified that on or about October 14, 1909, the plaintiffs were ready, willing and able to take the land described in the option contract and pay for it, and that it was not taken "on account of the title not being proper."

Plaintiffs offered in evidence the abstract which defendant furnished, which was certified to on October 19, 1908, and recertified on November 9, 1908.

H. E. Bash for the plaintiffs testified that he examined an abstract of the King land for Mr. Quigley and Parker-McIntosh. He was in the abstract business at Ava and Parker sent the abstract to him from Kansas City to see that it was right and brought down

to date; that he told them he could not recertify to it
as it was incomplete—that several transfers were out;
that he examined the records and made slips of trans-
fers that he thought should be in the abstract, and
which were on record prior to the certification of the
abstract. He was at first uncertain as to when he made
the slips with reference to the time the option would
expire, saying it was along about then. He testified
that Parker-McIntosh sent him $500 to turn over to
King, which he did, taking King's receipt. Being later
recalled, he was asked: "When was it you were called
on by Quigley and Heman and Lattimer to look up
this abstract and bring it up to date?" he answered:
"They called on me quite a while, in connection with
this $500, quite a while after that, I think just a short
time before the option expired that they called on me."
He finally stated that he made the examination of the
records and prepared the slips after September 22,
1909 (the date of the assignment of the contract from
the Parker-McIntosh Land Company to Quigley and
the other plaintiffs), and, in fact, after October 2,
1909, which was the date the last instrument appear-
ing on the records was filed for record, and it will be
remembered that the option was to expire on Octo-
ber 14, 1909. Bash testified that after he made the
slips and not long before the option would expire, King
came and got the abstract promising to return it, but
would not do so when requested, King's attorney de-
livering only the detached slips referred to; that at
this time Parker-McIntosh had sold out, and that he
among other citizens of Ava (Quigley, Miller, and oth-
ers) were thinking of taking up the option and that
Quigley and Miller said something to him about him
looking into the title through the abstract books. He
was asked: "Do you know why these parties didn't
take up the land?" His answer was: "It was in a
position that some roads run through there in a posi-
tion that it wouldn't plat with other land that was

optioned there and we couldn't make a plat conform with the plat of the other land on account of the road-way." On cross-examination, he stated that the first slip he prepared showed a quitclaim deed dated July 14, 1906, from King and wife to J. H. Murray, recorded July 16, 1906, and that this was the roadway in question, and that the next slip showed a warranty deed dated July 14, 1906, from King and wife to J. H. Murray, recorded June 30, 1908. The other slips showed the option contract in question and assignments thereof.

Plaintiff Heman was recalled and asked how $520 of the $1020 was paid, and he answered that as he understood, it was the subscription of King toward the building of the railroad.

It was with the idea of dividing King's land into town lots (the land adoined the city limits of Ava) and selling them that the option contract was originally made, it being supposed that a railroad which was being promoted would create a demand for such lots.

By reference to the receipt signed by King, which is hereinbefore set forth, it will be seen that it was dated August 2, 1909, so that considerably more than twelve months had expired since the contract was executed, and since two payments of one thousand dollars each had not been made to defendant within twelve months from the date of the contract, it had according to its terms, ceased and determined unless there was a waiver of this contract provision (as appellant now contends) and there is no plea of waiver in appellant's answer.

Appellant as a witness in his own behalf testified that he furnished an abstract and tendered a warranty deed and demanded the balance of the purchase money, all within the eighteen months. He admitted that he received the $500 from Parker-McIntosh.

We have set out the pleadings and evidence at some length in order to show on what theory the par-

ties evidently proceeded.. A glance at our abstract
of the pleadings leads one to expect the opinion to
deal with an action on the option contract. The evi-
dence shows a square conflict, plaintiffs claiming that
they complied in every particular with the contract
and were ready, able, willing and anxious to consum-
mate the transaction, and defendant claiming with
equal strength that he was ever ready and anxious to
go ahead with it. Not until the court gave this (the
first) instruction for the plaintiffs does the light fall
upon the theory which occupies the attention of oppos-
ing counsel in this court: "You are instructed that
on the terms of the option contract and under the law
and the evidence, the plaintiff is entitled to a recovery
of the five hundred dollars, with interest thereon at the
rate of six per cent per annum from the date of the fil-
ing of this suit, and will so return in your verdict."
This was a peremptory instruction to find for the plain-
tiff. The jury found as instructed, giving plaintiffs
$500 as damages and $100 as interest, and plaintiffs re-
mitted the last mentioned amount in the trial court. The
appellant now contends, having raised the point in his
motion for a new trial, that the trial court erred in
directing a verdict for the plaintiff, for the reason that
the verdict directed is not responsive to the pleadings
and is not supported by the evidence.

## OPINION.

FARRINGTON, J.—It is elementary that a plain-
tiff cannot sue on one cause of action and recover on
another. One pleading an express contract will not be
permitted to recover on one implied. [Canaday v.
United Rys. Co., 134 Mo. App. 282, 114 S. W. 88;
Michael v. Kennedy, 166 Mo. App. 462, 466, 148 S. W.
983; Walker v. Bohannon, 243 Mo. l. c. 137, 147 S. W.
1024.

Although it is true, as stated by respondents, that after verdict every reasonable intendment is brought to aid the pleading assailed (Oglesby v. Railway Co., 150 Mo. 137, 37 S. W. 829; Farmers Bank v. Assurance Co., 106 Mo. App. 114, 124, 80 S. W. 299), we cannot hold that the pleadings in this case were predicated on an action for money had and received. Defendant did not so regard the action, and it is highly probable that this was never thought of until the case was appealed.

The petition standing alone, by the most liberal construction, might be construed as stating a cause of action for money had and received and the allegations as to the contract might be treated as inducement or as surplusage. [See Crigler v. Duncan, 121 Mo. l. c. 291, 99 S. W. 61; Stuyvaert v. Arnold, 122 Mo. App. l. c. 426, 427, 99 S. W. 529; St. Louis Sanitary Co. v. Reed (Mo. App.), 161 S. W. l. c. 317; Richardson v. Drug Co., 92 Mo. App. l. c. 521.] However, the plaintiffs in their reply preclude us from giving their petition and their theory of the case that they can recover on the construction contended for, because in the reply they plead that the contract has not "ceased and determined" and that defendant is estopped from pleading that it had "ceased and determined." The pleadings and all the evidence introduced by both sides treat the cause of action as one for breach of an express contract and deal with the case on the theory that damages are to be recovered, if at all, for such breach. The plaintiffs manifestly sought to recover a judgment on this theory and it was this theory that defendant resisted. The facts of the case may uphold a cause of action in *indebitatus assumpsit*, but the theory on which the trial we are reviewing proceeded was that there had been a breach of an express contract for which plaintiffs sought damages, and it was unfair to the defendant, with the record in the condition it was, for the court to peremptorily instruct the jury to find

for the plaintiffs for a part of the recovery prayed in the first count of plaintiffs' petition. The court erred in giving such an instruction. By statutory enactment (Sec. 1865, R. S. 1909) parties litigant are to be protected by the court when it construes pleadings to secure them against being misled. In Hood v. Nicholson, 137 Mo. 400, 38 S. W. 1095, the Supreme Court in referring to the limits applicable to the liberal construction of pleadings, said that the courts would not, by construction, rob language of its plain and obvious meaning, to enable its author to relieve himself from a position of embarrassment where by its use he had voluntarily placed himself. The character of an action is determined from the averments of the petition. [Kellerman Contracting Co. v. Wrecking Co., 137 Mo. App. 392, 399, 118 S. W. 99; see, also, Huston v. Tyler, 140 Mo. l. c. 262 to 265, 36 S. W. 654, 41 S. W. 795.]

On examination of the contract hereinbefore set out it will be seen that it is an option contract and purely unilateral, the land owner obligating himself to convey on certain conditions, the proposed purchasers being under no obligation whatever to carry through the contract, and they had a perfect right to abandon it any time without incurring any liability. This is clearly shown by the last clause which is—"and no liability shall attach by this contract to either the first or second party." This disposes of defendant's counterclaim in which he attempted to recover damages for the breach of the contract. His rights are limited to the retention of any sums paid under the contract and nothing more, and his answer should embody this only. The second instruction given for plaintiffs is along this line and properly declared the law except as to the amount defendant would be entitled to retain, which should have been $1020 instead of $500 unless the $520 was paid by the defendant as his subscription to a railroad bonus.

The plaintiffs' petition in the first count states a cause of action for the recovery of money paid pro-vided they could prove the facts there alleged,—that they were ready, willing and able to perform the contract at all times but that the defendant refused to make a deed conveying good title to the land. The second count states a cause of action predicated on the same facts and basing the claim for damages on the alleged enhanced value of the land. Plaintiffs' right to recover on either count, however, is conditioned on their ability to show a readiness and willingness to perform the contract on their part and a refusal of the defendant to make a deed conveying good title.

In the case of Davis v. Barada-Ghio Real Estate Co., 115 Mo. App. 327, 338, 339, 92 S. W. 113, the court holds that in order for plaintiff to recover in this sort of action—"It was necessary to show further that Stephenson was ready and willing to perform the contract on his part and offered to do so." It is held in that case that it rests upon the party suing and alleging a breach of the contract to prove as a condition precedent to recovery that he offered to comply with his part of the contract. "In a case like this" said the court in the case last cited, "the law requires the party seeking relief, whether vendor or vendee, to show he did his duty." That case also holds that where land was mortgaged, since the owner did not therefore have a clear title, the proposed purchaser (the plaintiff) had a right to demand that the mortgage be paid off before he paid over the purchase price, and that it was not a sufficient answer for the owner to say that he intended to lift the mortgage with the purchase money. Under those circumstances, the plaintiff (the proposed purchaser) in order to recover for a breach of the contract must show that he actually tendered the purchase price or offered to pay or that there was a waiver.

It is the law as declared by the decisions in this State that in order for a defaulting purchaser to recover back the part of the purchase price paid he must show that he was ready, willing and able, and offered to perform his part of the contract, and that the proposed vendor refused, or, in case the proposed purchaser fails to perform some part of his contract, in order for him to recover any portion of the purchase price already paid it must appear that the proposed vendor treated the proposed purchaser's failure to perform as a forfeiture of the contract and as a rescission of the same.

The case of Crews v. Garneau, 14 Mo. App. 505, holds that earnest money cannot be recovered by one refusing to perform his part of the contract. To the same effect is the opinion in the case of Webb & Kinne v. Steiner, 113 Mo. App. 482, 489, 87 S. W. 618, in which many cases are cited as declaring this doctrine. The same rule is recognized in Norris v. Letchworth, 167 Mo. App. 553, 152 S. W. 421, where the court said (1. c. 557): "The rule is well settled and springs from the most elemental principles of justice that a party to a contract, himself at fault in its performance, cannot maintain an action for its rescission. To hold otherwise would be to allow a wrongdoer to take advantage of his own wrong. This rule has been recognized and applied in this State in a number of cases. [Authorities cited.] But it has no application to cases such as the present where the vendor having elected to rescind the contract on account of the default of the vendee, the latter, acquiescing in that action, sues to recover that portion of his performance of the contract in excess of the damages actually sustained by the vendor on account of his breach." This principle is emphasized by ELLISON, J., in his concurring opinion in that case.

In the case at bar there is evidence tending to show that the market price of the land was several thousand dollars less when the breach occurred than the price named in the contract.

We are of the opinion that if plaintiffs can make a case showing that they were ready, willing and able, and offered to perform their part of the contract and that defendant refused to carry out his part of the contract, or, although plaintiffs did not fully perform their part of the contract or offer to fully perform it, and the defendant treated such non-performance as a rescission, plaintiffs would then have a cause of action for money had and received and defendant could recover for any damage suffered by him on account of the plaintiffs' default. If, on the other hand, it is shown that the defendant was at all times ready, willing and able to perform his part of the contract and to convey, notwithstanding plaintiffs' default in making payments at stipulated times, then plaintiffs cannot recover either for breach of the contract or for money had and received. The case of Norris v. Letchworth, 140 Mo. App. 19, 124 S. W. 559, is an authority for permitting the plaintiffs to so amend their petition as to make it clearly state a cause of action as for money had and received. [See, also, Norris v. Letchworth, 167 Mo. App. 553, 152 S. W. 421; Clifford Banking Co. v. Donovan Com. Co., 195 Mo. l. c. 288, 289, 94 S. W. 527; Corrigan & Waters v. Brady, 38 Mo. App. 649.

The following is an expression only of the views of the writer of this opinion: When a contract is entered into, a party thereto has under the law two courses, one, to perform, the other, to breach the contract and answer in damages to the other party. That which gives stability to any civil contract is the preference of the parties thereto to perform rather than to answer in damages under the law. The courts refuse to permit a party to a contract to be penalized for a breach, and this, even though the contract by special

Quigley v. King.

provision fixes a penalty. In any case where either the vendor or the vendee seeks to hold the other for damages for breach of the contract, the measure of damages is the actual loss sustained. I do not believe that the reason given in the cases cited in this opinion —to-wit, that one cannot base a cause of action on his own wrong or on his own breach of a contract—is a sound reason for denying a defaulting purchaser to recover back all the purchase price paid less the damages his breach has caused the other party. His wrong extends only to the amount of actual loss the other party has sustained, and when he has paid that amount, under the law his wrong is requited; and therefore it seems to me that any suit brought for that amount over and above the actual damage to the other party is not based on his wrong because his wrong has been requited, and in my judgment he should be permitted to bring an action for this money which was received by the other party for which said other party suffered no wrong or damage or gave any consideration, and if he be permitted to retain it, whatever the reason may be that is given therefor, it leads to nothing short of recognizing a penalty, and this, to my mind, is contrary to the equitable principles that are enforced in actions for money had and received. However, I must agree with my associates that the law of this State as heretofore declared and which we must follow is not in accord with my views expressed in this paragraph.

For the reasons stated in the opinion in which we all agree as to the state of the law, the judgment is reversed and the cause remanded. *Sturgis, J..* concurs. *Robertson, P. J.,* concurs in the result.