Appeal from First District

## MALMBERG et al. v. BAUGH et al.

No. 3979.    Decided September 20, 1923.    Rehearing Denied October 6, 1923.    (218 Pac. 975.)

1. EVIDENCE—AMOUNT OF DEPRECIATION OF REAL PROPERTY NOT A MATTER OF JUDICIAL KNOWLEDGE IN SUPREME COURT. Even if the Supreme Court knows as a matter of common knowledge that there has been a depreciation of property generally throughout the state during a given period of time, it cannot know the extent of such depreciation in a particular case.

On Application for Rehearing.

2. VENDOR AND PURCHASER—VENDOR'S MEASURE OF DAMAGES ON PURCHASER'S DEFAULT AND VENDOR'S RE-ENTRY STATED; DEFAULTING PURCHASER CAN RECOVER PAYMENTS MADE IN EXCESS OF VENDOR'S DAMAGES. On purchaser's default in making payments on the purchase price of land and vendor's election to terminate the contract and re-enter, the vendor's measure of damages is the difference between the contract price with interest and the value of the land at the time of re-entry, plus the rental value of the property from the time the contract was terminated until re-entry, less any payments made on the contract; and, where the payments made on the contract exceed such damages such excess may be recovered by the purchaser.[1]

Appeal from District Court, First District, Cache County; *M. C. Harris,* Judge.

Action by Annie E. Malmberg and others against William L. Baugh and another. Judgment for plaintiffs, and defendants appeal.

REVERSED and REMANDED, with directions.

*J. D. Skeen,* of Salt Lake City, for appellants.

*Leon Fonnesbeck,* of Logan, for respondents.

---

[1] *Foxley* v. *Rich,* 35 Utah, 179, 99 Pac. 666; *Dopp* v. *Richards,* 43 Utah, 332, 135 Pac. 98; *Cooley* v. *Call,* 61 Utah, 203, 211 Pac. 977; *Rose* v. *Garn,* 56 Utah, 533, 191 Pac. 645.

THURMAN, J.

Plaintiffs' second amended complaint in substance alleges that on or about the 6th day of December, 1920, plaintiffs agreed to sell, and the defendants agreed to buy, certain real estate described in the complaint for the sum of $10,000, payable as follows: $2,500, by conveyance to plaintiffs of certain residence property in Cache county, Utah, which was made in advance. The balance $7,500, was to be paid in monthly installments on the 6th day of each month commencing January 6, 1921, until the said $7,500 had been fully paid, with interest at the rate of 6 per cent. per annum. An agreement to that effect was made in writing, placed in escrow, and is referred to and made part of the complaint. At the same time plaintiffs executed a warranty deed to the defendants for the property in question, which, together with an abstract showing good and marketable title in plaintiffs, was included in the escrow and delivered to the Farmers' Banking Company of Cache county, Utah, as the depository thereof. The escrow agreement, among other things, provided:

"In case of default in the above conditions the contents of this envelope consisting of the above-described papers are to be returned to the said grantors, upon demand, after thirty days from the date of such default, and the bank's responsibility for the custody thereof ceases at the expiration of said thirty days, it being understood that a payment of the amount due within said thirty days shall act as a reinstatement of this agreement."

It is then alleged in the complaint that the property referred to in the agreement consisted of real estate, the hotel building thereon, and the furniture and furnishings thereof, a list of which is attached as an exhibit and made a part of the complaint; that although defendants made the first payment of $2,500 by conveyance of the residence property, as above stated, they afterwards breached the escrow agreement by failing and neglecting to pay the installments due for February and March, 1922; that a demand was made of defendants to pay such installments, but defendants failed and neglected to pay the same, and on or about March 1, 1922,

repudiated said agreement; that after defendants had been in default for more than 30 days and after demand for payment had been refused, the said Farmers' Bank, as escrow holder, at plaintiffs' request, delivered back to plaintiffs said escrow agreement together with the aforesaid abstract and deed.

It is further alleged that plaintiffs are the owners of said property, and that on or about March 17, 1922, after the papers had been returned to plaintiffs, plaintiffs demanded possession of the premises, but defendants refused to deliver such possession until November 22, 1922, at which time defendants vacated the premises; that during said period from March 17 to November 22, 1922, defendants had the full use and occupation of the property and collected the rents and profits from the same, but have failed, neglected, and refused to pay plaintiffs any sum or amounts as rental therefor or to in any manner account for the rents and profits thereof during said period; that the reasonable value of the use and occupation of said property during said period was and is the sum of $150 per month, or $1,225 in all, which defendants impliedly promised to pay, but they have not paid the same, or any part thereof. The plaintiffs also allege a second cause of action for the value of certain items of furniture which they allege were not returned to them when defendants surrendered possession of the premises.

Plaintiffs demand judgment for $1,225 on the first cause of action and $217 on the second. This complaint was filed December 1, 1922.

The defendants, answering the complaint, admit the escrow agreement and the papers connected therewith, and depositing the same with said Farmers' Banking Company, as the depository thereof; admit that defendants conveyed to plaintiffs the residence property referred to in the complaint at an agreed consideration of $2,500, and that defendants discontinued payments for the property in escrow on the 1st day of February, 1922, and that no payments were made by them after that date; admit that on or about March 17, 1922, plaintiffs elected to rescind the contract of sale and demanded and received from the Farmers' Banking Company

the deed in escrow and demanded possession of the property in question; and admit that defendants refused to surrender possession thereof until about November 22, 1922, at which time plaintiffs accepted possession subject to the jurisdiction and control of the court for the purpose of adjudicating and enforcing the equities of the parties in and to the premises; admit that defendants from the 17th day of March to the 22d day of November, 1922, had the full use and occupation of the premises and collected the rents and profits thereof and refused to pay the same, or any part thereof, to the plaintiffs; deny that the property during said period was of the reasonable rental value of $150 per month, or any greater value than $50 per month.

Defendants deny the allegations of the second cause of action concerning the failure to surrender certain items of furniture, except as to one or two articles which they allege they sold with plaintiffs' knowledge and consent.

Further answering, defendants affirmatively allege that certain representations were made by William E. Malmberg, intestate of plaintiff Lucy Malmberg, concerning the condition of the property in question, which representations defendants relied on as an inducement to enter into said contract. Defendants allege they would not have entered into said contract except for said representations, and further allege that the same were untrue, and for that reason defendants refused to make further payments under said contract after February 1, 1922.

Finally it is alleged in the answer that on the 17th day of March, 1922, plaintiffs elected to rescind said contract and demanded possession of the premises; that on November 22, 1922, under stipulation duly made and entered in court, defendants surrendered to plaintiffs possession of the property subject to the jurisdiction and control of the court for the purpose of adjusting the equities between the parties; that plaintiffs are now in the sole and exclusive possession of the property.

Defendants then allege certain items of expenditure which they were compelled to make on account of the property be-

ing defective, out of repair, and unsuitable for habitation. (We have omitted such matters as are deemed immaterial to the questions to be determined.)

Defendants pray that the court determine the amount paid by them on the purchase price, and interest thereon, the cost of making necessary repairs on the building, the amount of taxes and insurance paid, the fair reasonable rental value of the property conveyed by defendants to plaintiffs as part of the purchase price of the escrow property, and after deducting therefrom the fair reasonable rental value of said escrow property, not exceeding $1,225, that defendants have judgment against the plaintiffs for the amount so found by the court, and that said sum be made a paramount lien upon the said escrow property and also upon the real estate conveyed by defendants to plaintiffs, or, in the alternative, that plaintiffs be decreed to reconvey said property to defendants, and when so conveyed that defendants have judgment against the plaintiffs for the residue of the amounts so found by the court.

The trial court sitting without a jury found the controlling issues in favor of the plaintiffs. It found the facts as alleged and admitted in the pleadings. In addition thereto, it found that on or about March 17, 1922, when the plaintiffs demanded possession of the premises, they informed defendants that from then on they would be required to pay rent for the premises; that the reasonable rental value, as stipulated at the trial, was $75 per month; that defendants made no tender or offer to perform after their breach of the contract, and there was no mutual rescission of the same, as alleged by defendants; that the allegations in defendants' answer of fraud and misrepresentation by the plaintiffs were untrue; that plaintiffs' allegations as to defendants withholding certain articles of furniture when they surrendered the premises are not sustained, except as to two items totaling the sum of $30.

Conclusions were made in accordance with the findings and judgment entered for the plaintiffs for the sum of $612.50 on account of rent and $30 for conversion of the personal

property.   Judgment was also entered quieting plaintiffs' title to the premises in question.

Defendants appeal.

The questions involved, in the main, must be determined on the pleadings and the findings made by the court.   There is but one question of fact in the case which the parties consider of controlling importance.   It is contended by appellants that there was a mutual rescission of the escrow agreement, and that in such case the defendants are entitled to be repaid the payments made by them on the purchase price of the property; also for money paid on account of taxes and insurance; that as against these amounts plaintiffs are entitled to the sums found as reasonable rental for the escrow property, and damages for the personal property converted.

Appellants' contention that there was a mutual rescission of the contract appears to rest upon two grounds:   (1) That there was a rescission as matter of law, which can be determined from the pleadings alone; (2) that the parties during the trial of the case agreed to a mutual rescission.

As the last proposition involves a question of fact, we will first dispose of that.   Before doing so, however, we will briefly review the proceedings leading up to the final hearing.   The first complaint was filed April 18, 1922.   It prayed for a restitution of the property and damages for withholding it in the sum of $150.   William E. Malmberg was a party plaintiff and died soon after the action was commenced.   An amended complaint was filed in August of the same year in which his administratrix was made a party.   The amended complaint was substantially in the same form as the original, except that the damages prayed for were $500.   An answer was filed to the amended complaint and the case came on for trial November 17, 1922.   During the course of the trial counsel for the parties engaged in a colloquy as to the purpose of the action.   The main question seemed to be whether or not the action was for a rescission of the escrow agreement.   In the early stages of the colloquy counsel for respondent, in answer to one or two questions propounded by counsel for appellants, made statements somewhat ambiguous,

which from one point of view might be taken as an admission that it was an action for rescission, whereupon counsel for appellants said: "Then at this time, we join in the prayer that the contract be rescinded." Then the court said: "All right, that is the issue, gentlemen." From later remarks it appears the court had an idea that it was an action to rescind the contract, but it is equally manifest that counsel for respondents did not so understand it, for at least, in answer to a statement by appellants' counsel, he said, in substance, that counsel for appellants was trying to place him in the position of asking for something which he was not asking for; that his position was that he was asking for the possession of the property and for damages, and was not asking to rescind anything, because there was nothing to be rescinded. He further said:

"For counsel to insist that we are asking for these papers to be rescinded, we are not asking for anything of the kind. * * * We are asking for possession of the premises, the contract having been forfeited and rescinded."

The court found there was no mutual rescission, and as far as concerns what occurred at the trial we do not feel authorized to disturb the finding.

In Black on Rescission, § 525, it is said:

"To effect a rescission by subsequent mutual agreement, it is necessary that the contract to rescind should receive the free and understanding consent of both or all of the parties to the original contract. Just as in making a contract so in a negotiation for its abrogation or termination, there must be a meeting of the minds of the parties in respect to the proposition that it shall be cancelled."

Was there a mutual rescission as matter of law? If so, it must be upon the theory that when a vendee defaults and the vendor for that reason terminates the contract it amounts to a rescission entitling both parties to be put in statu quo. Upon this question we quote the following from Sutherland on Damages (4th Ed.) § 586:

"There is much conflict in the American decisions as to a purchaser's right in respect to payment made on a contract of purchase, after the vendor has put an end thereto for the vendee's default. One class of cases holds that, under such circumstances,

the payments made are forfeited and lost; and another that the putting an end to a contract by the vendor for such cause is a rescission, and entitles both parties to be put in statu quo."

·Later on in the same section the author says:

"On principle, if a contract is rescinded by the vendor, even for the vendee's default, the former should restore what he has received upon it; and this view is believed to be sustained by the weight of authority. Even if the contract shows that the parties intended that on default of the vendee all previous payments should be forfeited, and it be declared void at the vendor's option, this intention should be disregarded for the same reasons that govern in the case of other penalties."

I am very much in sympathy with the views expressed by the distinguished author in the excerpt above. quoted, especially in cases like the one at bar where the parties have not stipulated a forfeiture or liquidated damages. As to these I am of opinion the question should be reserved until a case is presented calling for its detrmination.

Both the parties to this litigation proceeded upon the theory that the question as to whether there was a mutual rescission of the contract was a question of controlling importance. The respondent contends that there was no mutual rescission; that the vendee defaulted while the vendor was ready and willing to perform; and that therefore the vendee is not entitled to recover payments on the purchase price. In support of this contention the following cases are relied on: *Hurley* v. *Anicker*, 51 Okl. 97, 151 Pac. 593, L. R. A. 1918B, 540, and note; *Joyce* v. *Shafer*, 97 Cal. 335, 32 Pac. 320; *Shively* v. *Land Co.*, 99 Cal. 259, 33 Pac. 848; *Merrill* v. *Merrill*, 103 Cal. 287, 35 Pac. 768, 37 Pac. 392; *Glock* v. *Howard*, 123 Cal. 1, 55 Pac. 713, 43 L. R. A. 199, 69 Am. St. Rep. 17; *Hansbrough* v. *Peck*, 5 Wall. 497, 18 L. Ed. 520; *Ward* v. *James*, 84 Or. 375, 164 Pac. 370; *Hall* v. *Yaryan*, 25 Idaho, 470, 138 Pac. 340; *Snow* v. *Duxstad*, 23 Wyo. 82, 147 Pac. 174; *Cornely* v. *Campbell*, 95 Or. 345, 186 Pac. 563, 187 Pac. 1103; *Lemle* v. *Barry*, 181 Cal. 1, 183 Pac. 150; *Englander* v. *Rogers*, 41 Cal. 420; *Dennis* v. *Strassburger*, 89 Cal. 583, 26 Pac. 1070; *Townsend* v. *Tufts*, 95 Cal. 257, 30 Pac. 528, 29 Am. St. Rep. 107; *Leach* v. *Rowley*, 138 Cal. 709, 72 Pac. 403; *Way* v. *Johnson*, 5 S. D. 243, 58 N. W. 552;

*Bradford* v. *Parkhurst,* 96 Cal. 102, 30 Pac. 1106, 31 Am. St.
Rep. 189; *McKinney* v. *Harvie,* 38 Minn. 18, 35 N. W. 668,
8 Am. St. Rep. 640; *Lawrence* v. *Miller,* 86 N. Y. 131; *Hatha-
way* v. *Hoge* (Pa.) 1 Atl. 392; *Scott* v. *Glenn,* 87 Cal. 221,
25 Pac. 405; *Anderson* v. *Strassburger,* 92 Cal. 38, 27 Pac.
1095; *Easton* v. *Montgomery,* 90 Cal. 307, 27 Pac. 280, 25
Am. St. Rep. 123; *Donahue* v. *Parkman,* 161 Mass. 412, 37
N. E. 205, 42 Am. St. Rep. 415; *Hillyard* v. *Banchor,* 85 Kan.
516, 118 Pac. 71; *Hurley* v. *Anicker,* 51 Okl. 97, 151 Pac. 593,
L. R. A. 1918B, 538; *Empire Inv. Co.* v. *Mort,* 171 Cal. 336,
153 Pac. 236; *Russell* v. *Hawxhurst,* 44 Cal. App. 703, 187
Pac. 146; *Zautz* v. *Sebrean* (Cal. App.) 211 Pac. 836; also
39 Cyc. 2025, 2047, 2055; 22 Enc. Pl. & Pr. 763; 39 Cyc.
1605.

Appellants contend that there was a mutual rescission and
insist upon a statu quo adjustment of the equities. In other
words, appellants insist they are entitled to recover on their
counterclaim the amount paid on the purchase price, also for
taxes and insurance, less a reasonable sum for use and occu-
pation of the premises. In support of this contention they
cite and rely on the following authorities: *Shively* v. *Semi-
Tropic Land & Water Co.,* 99 Cal. 259, 33 Pac. 848; *Drew* v.
*Pedlar,* 87 Cal. 443, 25 Pac. 749, 22 Am. St. Rep. 257; *Cleary*
v. *Folger,* 84 Cal. 316, 24 Pac. 280, 18 Am. St. Rep. 187;
*Phelps* v. *Brown,* 95 Cal. 572, 30 Pac. 774; *Lytle* v. *Scottish
American Mortgage Co.,* 122 Ga. 458, 50 S. E. 402; *Frink* v.
*Thomas,* 20 Or. 265, 25 Pac. 717, 12 L. R. A. 239; *Howard* v.
*Stillwagon,* 232 Pa. 625, 81 Atl. 807; *Sanders* v. *Brock,* 230
Pa. 609, 79 Atl. 772, 35 L. R. A. (N. S.) 532; *Norris* v. *Letch-
worth,* 167 Mo. App. 553, 152 S. W. 421; *Quigley* v. *King,*
182 Mo. App. 196, 168 S. W. 285; *Waters* v. *Pearson,* 163
Iowa, 391, 144 N. W. 1027; *Pierce* v. *Staub,* 78 Conn. 459,
62 Atl. 760, 3 L. R. A. (N. S.) 785, 112 Am. St. Rep. 163;
*Rexford* v. *Southern Woodland Co.* (D. C.) 208 Fed. 295;
*Reidt* v. *Smith,* 75 Wash. 365, 134 Pac. 1057; *Davis* v. *Wilson,*
55 Or. 403, 106 Pac. 795; *Nason* v. *Patten,* 88 Kan. 472, 129
Pac. 138; *Lipscomb* v. *Fuqua,* 103 Tex. 585, 131 S. W. 1061;
*Smith* v. *Moore* (Tex. Civ. App.) 155 S. W. 1017; *Blitch* v.
*Edwards,* 96 Ga. 606, 24 S. E. 147; *Foxley* v. *Rich,* 35 Utah,

162, 99 Pac. 666; *Dopp* v. *Richards,* 43 Utah, 332, 135 Pac. 98; *Harsh* v. *Neil,* 52 Utah, 533, 175 Pac. 606; *Rose* v. *Garn,* 56 Utah, 533, 191 Pac. 645; *Cooley* v. *Call,* 61 Utah, 203, 211.

It is not our purpose to undertake a detailed review of these authorities. It is sufficient to say that the cases cited by respondent generally sustain the proposition that a defaulting vendee cannot recover for payments made on the purchase price of land where the vendor is ready and willing to perform. The cases cited by respondent, however, are, with some exceptions, cases in which the contract provides for a forfeiture of payments as liquidated damages and also makes time the essence of the agreement. In the cases cited by appellant in which the vendee was permitted to recover for payments on the purchase price the courts also generally find there was a rescission of the contract, but in many of them, when carefully analyzed, it will be found there was no rescission at all, unless we concede that the facts and circumstances of the instant case amount to a rescission.

The fact is that the rule contended for by respondent, that a defaulting vendee cannot recover for payments made on the purchase price when the vendor is without fault, has been so manifestly unjust and oppressive in many cases that courts in order to mete out justice to a defaulting vendee have placed a strained construction upon the conduct of the vendor and denominated it a "rescission," when such holding was hardly justified under the law as applied to the facts. Black on Rescission, §§ 1 and 6. In the opinion of the writer the controlling question here is not one of mere terminology. The vital question to be determined is: What is the correct measure of damages in a case of this kind? Shall we apply the rule of compensatory damages, or is it a case in which punitive damages should be allowed? Upon what principle can punitive damages or damages in excess of compensation for the injury done be justified in the case at bar? These are questions that appeal both to the judgment and conscience of the court.

What are the undisputed facts? Appellants entered into a written contract with respondent for the purchase of the property in question for the sum of $10,000. They made a

down payment on the purchase price of $2,500 by a convey-
ance of residence property in Cache county, Utah. The re-
mainder, $7,500, according to the escrow agreement, was to
be paid in monthly installments of $150 each, commencing
January 6, 1921. They paid all of the installments accord-
ing to the terms of the agreement for the first 13 months,
totaling the sum of $1,950. They defaulted in the February
and March payments of 1922, whereupon plaintiffs requested
and received a return of the escrow papers. They demanded
of defendants payment of the past-due installments, and upon
their failure or refusal to pay, on March 17, 1922, they de-
manded possession of the premises, which demand was like-
wise refused. Within less than three weeks thereafter plain-
tiffs commenced this action for possession of the property and
damages for withholding it. Later on the complaint was
amended, alleging that possession of the property had been
restored to the plaintiffs. In the amended complaint plain-
tiffs prayed for the rental value of the premises from the time
of the demand for possession until possession was surren-
dered.

It cannot rationally be contended that defendants did not
enter into the contract in good faith, and did not continue in
good faith to make the stipulated payments thereon down to
and including the January payment of 1922. The fact that
defendants conveyed their home of the agreed value of $2,500,
at the time of making the agreement, would be a conclusive
answer to a charge of bad faith. The fact that they continued
to make monthly payments for 13 months thereafter in sums
greater than the reasonable rental value of the property is
further evidence of their good faith in endeavoring to carry
out the contract. Their refusal at last to make further pay-
ments is based on the fact, as they allege in their counter-
claim, that plaintiffs misrepresented the condition of the
property purchased in numerous particulars and promised a
reduction in the price thereof, or would otherwise make good
the losses sustained by defendants, and in consequence of
said promises defendants continued to make the payments
thereof until the month of February, 1922, at which time it
is alleged plaintiffs refused to perform their said promises.

We find nothing willful, wanton, or malicious in the conduct of defendants in respect to the transaction, or in their failure to pay the last two installments upon which plaintiffs demanded and received a return of the escrow papers. It is true defendants defaulted, and by their default lost their right to purchase the property; but did they subject themselves to the infliction of punitive damages by being compelled to forfeit practically 50 per cent. of the stipulated price of the property which they had agreed to purchase?

There is nothing in the contract, unless it can be read between the lines, by which they agreed to forfeit payments on the purchase price. Equity abhors a forfeiture, and the law does not favor it. This is elementary; in fact, it is axiomatic in every jurisdiction of the country, and we feel justified in propounding the question: Why should anything more than compensatory damages be allowed in cases of this kind, especially where there is no stipulation in the agreement upon which to base the allowance? It is ordinarily considered oppressive and intolerable to enforce a forfeiture amounting to punitive damages even where it is expressly agreed to by the parties. A fortiori, such damages should not be awarded where they are not expressly stipulated in the contract.

The exact question presented here is one of first impression in this jurisdiction, and yet, I believe, sufficient has been said in former decisions to indicate the mind of the court.

In *Foxley* v. *Rich*, 35 Utah, 179, 99 Pac. 666, the plaintiff, as vendee in a contract for the purchase of real estate, sued the assignee of the vendor to recover a payment made on the purchase price. The contract provided that in case of default in the payment of the stipulated amounts payments made by the vendee should be used as rent for the premises. The vendee paid $500 at the time of entering into the agreement. His contention was that certain conduct of the vendor amounted to a termination of the contract which justified him in refusing to make further payments. Upon this ground he sought to recover the payment made on the purchase price. The trial court sustained his contention. On appeal this court reversed the judgment, holding that the vendor was at all times ready and willing to perform and

was entitled to the payment as rent under the terms of the contract.

In *Dopp* v. *Richards,* 43 Utah, 332, 135 Pac. 98, the vendor brought an action against the vendee for breach of a contract to purchase land. The contract contained a clause forfeiting payments made by the vendee as liquidated damages in case of his default and also provided that time was of the essence of the contract. The plaintiff, as vendor, alleged the default of the vendee and prayed for damages in excess of the amount stipulated in the agreement. The trial court found in his favor, but this court on appeal reversed the judgment, holding that the amount stipulated as damages was just and equitable and that the vendor was bound thereby. We will make further reference to this case before concluding this opinion.

In *Cooley* v. *Call,* 61 Utah, 203, 211 Pac. 977, the vendor sued for specific performance of a contract to purchase land. The contract, among other provisions, provided that in case of the neglect or refusal of the vendee to pay the purchase price, or any installment, or interest, or taxes, when due, the contract would become void and payments thereon forfeited as stipulated damages for nonperformance. The vendee defaulted after the first payment and defended the action on the ground that plaintiff was estopped by the stipulation forfeiting payments as damages for a breach. The trial court found for defendant and this court affirmed the judgment.

*Rose* v. *Garn,* 56 Utah, 533, 191 Pac. 645, was also a case by a vendor for specific performance of a real estate contract with a clause forfeiting payments on the purchase price as stipulated damages in case of default. The vendee defaulted after making two payments, and, as in the case of *Cooley* v. *Call,* supra, defended the action on the ground that the forfeiture of the sums paid under the contract relieved him from further liability to the plaintiff. The trial court sustained his contention, and on appeal the judgment was affirmed.

In each and every one of these cases it appears without question that the stipulated damages were just and equitable and in the nature of compensatory damages only.

In the cases of *Dopp* v. *Richards* and *Cooley* v. *Hall,* supra,

the court took particular pains, by mathematical computation, to demonstrate that the damages stipulated were only compensatory for the injury sustained by the vendor.

In the other two cases it is manifest that the payments forfeited were compensatory only but not mathematically computed.

These are the principal cases decided by this court involving the forfeiture of payments on the purchase of land.

Referring again to the case of *Dopp* v. *Richards,* supra: After the court had determined by mathematical computation that the payments made by the vendee were just and equitable compensation for the injury sustained by the vendor, the court, at page 342 of 43 Utah, at page 102 of 135 Pac., of the report, says:

"While the authorities upon the question of the measure of damages, in cases where the vendee defaults in making the payments stipulated for in the contract, * * * are not harmonious, yet we think that the better reason and the greater weight of authority sustain the rule that under such circumstances the measure of damages is the difference between the value of the land at the time of the breach of the contract, or, as it is sometimes stated, at the time of the re-entering of the vendor and the abandonment of the land by the vendee, and the contract price agreed to be paid, together with interest on the purchase price. Under contracts like the one in question, the vendor has a choice of remedies, (1) an action for specific performance, (2) a suit at law to recover the purchase price, with interest, and (3) to reenter and take possession of the land, and sue to recover damages for the breach of the contract. We need not discuss the remedy for specific performance. If the vendor wishes to recover the purchase price, the measure of his recovery is the amount thereof, with interest. *If he repossesses himself of the land, the measure of damages is the difference between the contract price, with interest, and the value of the land at the time of re-entering by the vendor or abandonment of the contract by the vendee, less any payments made by the latter upon the contract.*" (Italics supplied.)

Numerous cases are cited in support of the proposition thus announced by the court.

If the Dopp Case had been a case in which a vendee in default was seeking to recover payments made on the purchase price, after the vendor had terminated the contract and re-

sumed possession on account of the default, the case would be squarely in point upon the precise question presented here. As it is, the case is instructive in a high degree, and, as heretofore suggested, it strongly indicates the mind of the court concerning the question involved in the instant case.

It does seem to me that when a vendee in a case of this kind defaults in the payment of an installment on the purchase price of land and the vendor because of the default terminates the contract, receives possession of the land, and brings an action for damages or other form of pecuniary relief, the measure of damages suggested in the excerpt last above quoted is entirely adequate, just, and equitable, and any greater allowance to the vendor would be punitive and wholly inconsistent with the administration of evenhanded justice.

The rule contended for by respondent, carried to its logical sequence, would forfeit every dollar paid by appellant and still leave respondent in possession of the land even if appellants had paid the last installment but one, and then defaulted. In answer to this, it may be said that such is not the case at bar. But where are we going to draw the line? Appellants have already paid $4,450. The court rendered judgment against them for $642.50 more, which totals $5,092.50 paid on a deal of $10,000, and all they have received in return is the use and occupation of the property for a period of approximately 22 months. If the rental value as stipulated by the parties for the last 8 months, which was $75 per month, was the fair rental value, it simply means, unless the property depreciated in value during the time it was in appellants' possession, that appellants have paid full compensation for the use of the property during the time they had it and have been compelled to pay as punitive damages an additional sum of about $3,500, and that, too, without any contract for forfeiture or liquidated damage. A rule that admits of such oppression and hardship is unjust and inequitable. It ought not to be enforced in a court of justice whenever the damages exceed an adequate and just compensation for the wrong complained of.

It would be more than ordinarily interesting and instruc-

tice, if time and space would permit, to quote from some of the cases the strong language used by the court in denunciation of the rule invoked by respondent in cases where the damages are punitive and extraordinarily excessive, as in the case at bar. In view of the unusual length of the opinion already attained we feel constrained to make reference to only a few of the cases relied on by appellants hereinbefore cited and commend them to the reader's special attention. *Pierce* v. *Staub*, 78 Conn. 459, 62 Atl. 760, 3 L. R. A. (N. S.) 786, 112 Am. St. Rep. 163; *Norris* v. *Letchworth*, 167 Mo. App. 553, 152 S. W. 421; *Waters* v. *Pearson*, 163 Iowa, 391, 144 N. W. 1027; *Howard* v. *Stillwagon*, 232 Pa. 625, 81 Atl. 807; *Shively* v. *Semi-Tropic Land & Water Co.*, 99 Cal. 259, 33 Pac. 848; *Lytle* v. *Scottish American Mortgage Co.*, 122 Ga. 458, 50 S. E. 402; *Frink* v. *Thomas*, 20 Or. 265, 25 Pac. 717, 12 L. R. A. 239.

From what has been said in the preceding pages it should not be inferred that the court is unmindful of the rights of the vendor arising out of the contract. On the contrary, every contractual right of the vendor should be scrupulously preserved, but in cutting the pound of flesh no blood must be shed. "It is not so nominated in the bond."

Having elected to terminate the contract and resume possession of the property, the vendor, under the rule we invoke, is entitled only to compensatory damages measured by the difference between the contract price of the land, with interest, and its value at the time he terminated the contract and elected to resume possession of the property less payments made thereon by the vendee. Upon the most casual analysis it will be found that this rule secures to the vendor the full benefit of his contract, and, in the opinion of the court, that is all he is entitled to under the law. If there are any damages in the case not covered by the above rule, they have not been made to appear.

In the brief of respondents it is suggested that the court will take judicial knowledge that there was a depreciation in the value of the property during the time it was occupied by the appellants. This suggestion is manifestly untenable. Even if the court knew as a matter

of common knowledge that there had been a depreciation in the value of property generally throughout the state during a given period of time, it does not follow that the court could possibly know the extent of such depreciation.

In view of the fact that all of the parties to the proceeding, including the court, seem to have proceeded upon a wrong theory as to the measure of damages, the court is of opinion that justice can only be done by reversing the judgment and remanding the cause for a new trial, with directions to the trial court to permit the parties, upon their request, to amend their pleadings, so that the case may be tried and determined in accordance with the views herein expressed. It is so ordered. Each party to pay one-half of the costs on appeal.

WEBER, C. J., and GIDEON, FRICK, and CHERRY, JJ., concur.

On Application for Rehearing.

PER CURIAM. On application for rehearing, respondent insists that from the time the contract was terminated and possession demanded by the vendor he was entitled to recover the rental value of the property, and that the rule of damages laid down by the court should be modified to that extent. The court agrees with respondent's contention in that regard. Indeed, as stated in the opinion, "every contractual right of the vendor should be scrupulously preserved," provided, as in the case at bar, the contract is not unconscionable or one that a court of equity would not enforce.

We are of opinion that the vendor is entitled to the rental value of the property from the time the contract was terminated and until he was restored to its possession. With this modification of the decision, the application for rehearing is denied.