B. A. SALTZMAN, APPELLANT, *v.* ROBERT McCOMBS, AND ALMA McCOMBS, RESPONDENTS.

No. 3813

March 23, 1955.                    281 P.2d 394.

*David Zenoff,* and *Calvin C. Magleby,* Las Vegas, for Appellant.

*G. William Coulthard,* and *Alvin N. Wartman,* Las Vegas, for Respondents.

## OPINION

By the Court, EATHER, J.:

Plaintiffs Robert McCombs and Alma McCombs instituted this suit against the defendant, B. A. Saltzman, based upon the fact that between March 1, 1953 and June 18, 1953, plaintiffs paid to defendant the sum of $1,000 as part payment under a verbal agreement whereby the defendant, B. A. Saltzman, undertook the construction of a home for the plaintiffs at the agreed purchase price of $15,500.

Thereafter, and on March 18, 1953, the sole and only written agreement between the parties was executed in the form of escrow instructions to the Pioneer Title Insurance and Trust Company of Las Vegas. The instructions contained express provisions that the balance of the purchase price was to be paid when the FHA application was approved, and in the event that the purchasers' application should for any reason not be approved, then any moneys paid to the seller, either direct or through the escrow, should at the option of the purchasers be returned to them and the escrow canceled.

Sometime between March 18, 1953 and June 18, 1953, Alma McCombs, one of the plaintiffs herein, approached the local FHA office in Las Vegas, Nevada, with an inquiry as to the necessary prerequisites for the securing of an FHA loan. On or about the 13th day of June, 1953, the plaintiffs herein contacted Mr. P. S. Rhodes, assistant vice-president of the Bank of Nevada, in Las Vegas, in regard to securing an FHA loan. On June 17, 1953, they notified defendant that they were unable to secure a loan and demanded the return of the $1,000 deposit from the defendant. This demand was refused and plaintiffs commenced this action. Judgment was entered in their favor and defendant has taken this appeal.

Clearly the inability of respondents to secure a loan would relieve them from performance and entitle them to the return of their deposit.

"The contract made between the litigants was based upon a suspensive condition and the plaintiff's obligation to purchase did not come into existence until the happening of the event on which the offer was conditioned. As he was unable to obtain a loan, plaintiff's obligation has not come into existence and he is at liberty to withdraw and to require that his deposit be returned to him. The agreement to sell and purchase was conditioned upon plaintiff obtaining a loan. The condition is clearly stated on the reverse side of the check and the

evidence sustains it. It was for cash. The plaintiff made a diligent effort to comply with the suspensive condition." McPherson v. Warren, 55 So.2d 30, at page 33. To the same effect, Johnson v. Graham et al., 40 So.2d 500, 502.

It is the contention of the appellant that the respondents failed to conform to the terms of the agreement, in that they failed to make a bona fide attempt to secure said financing. We feel there is no merit in this contention.

Mr. P. S. Rhodes, assistant vice-president of the Bank of Nevada, in charge of the real estate loan department, testified in part as follows:

"Q. What did Mr. McCombs contact you about that morning? A. As I recall, he had been somewhere to apply for an FHA loan, and had been told that he wouldn't qualify under FHA requirements, and he came in and asked me what I thought about it. I questioned him about his employment, income and obligations, and judging from the information he gave me at that time I agreed that under the FHA regulations in effect at that time, he wouldn't qualify, and there was no use to put in an application.

"Q. Did you put these ideas in written form? A. Yes, at his request. It is a little unusual request, but we have a lot of unusual requests, so I did.

"Q. Did you give him the original of this written form? A. I think I handed it to him at the time."

The following is a copy of the letter above referred to and introduced in evidence as plaintiff's exhibit No. 4.

"Bank of Nevada, Main Office, Las Vegas, Nevada. June 13, 1953.

"Mr. and Mrs. Robert McCombs

"321 South Main Street

"Las Vegas, Nevada.

"Dear Mr. and Mrs. McCombs:

"In reply to your request for financing the purchase of a home, in view of the instability of your employment and income, we regret that we cannot approve your application at this time.

"We would be happy to reconsider the application at a later date after the permanency of your employment can be established.

"Very truly yours,

"/s/ P. S. Rhodes,

"Assistant Vice-President."

According to the testimony of Robert McCombs he had heard that Mr. Rhodes at the bank was an FHA representative and handled FHA loans. This in fact appeared to be the situation, though Mr. Rhodes described a preliminary screening process through a broker, followed by the bank's own opinion as to whether the applicant could qualify. The bank made very few loans without an FHA commitment.

Appellant claims that respondents were guilty of breach of contract in failing formally to apply in writing for an FHA loan. Respondents claim, in part, that there was no such express agreement. There may well be doubt upon this point. However, even accepting that there was an express promise on the part of respondents to make formal written application for an FHA loan, and accepting that this was not done, still under the facts of the case such breach was wholly without consequence. The record demonstrates that had application been made it would have been rejected. It is clear that the respondents were so advised by a representative of the FHA, and were so advised in writing by the bank to which they did, in truth, apply for a loan. We are left with the conclusion that had the formal written application been made, the situation would not have been changed in the slightest and the same result would have followed.

Under these circumstances this breach, if it be regarded as one, is wholly immaterial.

For the reasons assigned the judgment appealed from is affirmed at appellant's cost.

MERRILL C. J., and BADT J., concur.