DONALD M. KITCHIN, APPELLANT, v.
TULIO MORI, RESPONDENT.

No. 5373

March 4, 1968                                437 P.2d 865

*Gordon W. Rice,* of Reno, for Appellant.

*Diehl, Recanzone & Evans,* of Fallon, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

This was a suit by a buyer, Kitchin, for return of moneys paid as deposit and down payment for the purchase of a business. The trial court dismissed the complaint after presentation of the buyer's evidence on the ground that he had failed to prove a sufficient case for the court upon the facts and the law, and also that no basis for restitution had been proved.

In May 1965, Kitchin and Mori entered into negotiations for the purchase of Mori's bar, restaurant and casino business known as the "Club Horseshoe," in Fallon. In June they entered into a written contract for the purchase and sale of the club. Kitchin paid $500 to Mori as earnest money for the purchase. The essentials of their agreement were not in dispute save for the buyer's contention that the transaction was conditioned upon his obtaining a casino license from the appropriate Nevada authorities. The condition was not expressed in the written memorandum of the transaction, but the trial court allowed testimony concerning it without objection from the seller. The full purchase

price was $30,000, payable $5,000 upon execution of the agreement (which was paid) and the balance of $25,000, at $400 per month, including interest at 4 percent per annum. The unpaid purchase price was to be secured by a chattel mortgage of the personal property. In addition, Kitchin was to purchase the stock in trade for cash at cost price. Although the effective date of the sale was July 1, 1965, the buyer was to come upon the premises and assist in the operation until he took over. He did go upon the premises, familiarized himself with the operation and made application for a liquor license from the city of Fallon, applied for transfer of the utilities in his name and made application for a gaming license. He further provided $1,350 for minor repairs and operating money in contemplation of the purchase of the business.

In early July, Kitchin, not having heard from the gaming commission, spoke informally with one of its members who indicated that he might not be able to get a license. Thereupon, Kitchin withdrew his application and called the deal off. Upon Mori's refusal to refund the moneys paid in, Kitchin commenced this action for the amounts already paid and the $1,350 invested in the operation of the business, in all $6,850. His claim for restitution is predicated upon his failure to obtain a gaming license, apparently acknowledged as a condition precedent of the sale, or in the alternative, upon a theory of unjust enrichment in light of all the circumstances.

The trial court granted Mori's motion for judgment of dismissal under Rule 41(b) NRCP from which Kitchin appeals. We affirm the ruling of the trial court.

1. On occasion, failure to exert reasonable efforts under all the circumstances to perform a condition incumbent upon the buyer to perform will, without more, justify retention by the seller of the earnest money deposited. Glassie v. King, 360 F.2d 503 (D.C.Cir. 1965); Margolis v. Joh, 220 A.2d 542 (Md.App. 1966). But the great weight of authority which we choose to follow allows recovery to a defaulting buyer upon his showing that the payments made by him exceed the amount of the seller's damages. Freedman v. Rector, 230 P.2d 629 (Cal. 1951); Harriman v. Tetik, 366 P.2d 486 (Cal. 1961); Honey v. Henry's Franchise Leasing Corp. of America, 415 P.2d 833 (Cal. 1966); Anaheim Company v. Holcombe, 426 P.2d 743 (Ore. 1967); Malmberg v. Baugh, 218 P. 975 (Utah 1923); Schwartz v. Syver, 59 N.W.2d 489 (Wis. 1953); Corbin on Contracts, Vol. 5A, §§ 1122–1124, 1129–1135 (1964); 40 Yale L.J. 1013 (1931); Restatement, Contracts,

§ 357 (1932). Even a wilfully defaulting vendee may recover the excess of his part payments over the damages caused by his breach. Harriman v. Tetik, supra; Honey v. Henry's Franchise Leasing Corp. of America, supra.

2. If the payments made by the buyer exceed the seller's damages, the burden is on the party who charges that unjust enrichment to prove it. Absence of such showing or failure of proof will preclude recovery. Adkins v. Morgan, 338 S.W.2d 921, 923 (Ark. 1960); Nourse v. Azvedo, 195 P. 669 (Cal. 1921); Quillen v. Kelley, 140 A.2d 517, 522 (Md.App. 1958); Oliver v. Lawson, 223 A.2d 355, 358 (N.J.App. 1966).

The casual observation by one member of the Gaming Control Board is not sufficient to justify Kitchen's withdrawal of the gaming application so it cannot be said that Kitchin exercised reasonable diligence to comply with the condition. (Cf. Saltzman v. McCombs, 71 Nev. 93, 281 P.2d 394 (1955)). He testified that at the time he withdrew the application for a gaming license he did not know whether or not it would be granted. This is further borne out by the fact that he later made application for a gaming license for a casino in another location. Thus, Kitchin's only recourse was to show affirmatively that Mori suffered no damage from the failure of the sale to be consummated, or that the amount of Mori's damage was less than the sum retained. No proof whatsoever was given bearing on the amount of damages. We therefore hold with the trial court that this case was properly dismissed under Rule 41(b) NRCP.

Our perception of the damage issue differs from that of the dissenting opinion only in respect to our refusal to give the plaintiff, Kitchin, a second bite of the apple. In the Honey v. Henry's Franchise Leasing Corp. of America, supra, and Malmberg v. Baugh, supra, cases, both trial courts entertained the damage question but applied the wrong measure and were reversed on that ground. In our case, Kitchin offered no proof of Mori's damages, or lack of them, whatsoever. He failed to carry his burden of proof. The principle announced today is not so new as to require us to give him relief for his omission since the law reflected by the majority has been clearly and universally established for many years.

Affirmed.

THOMPSON, C. J., and BATJER, J., concur.

COLLINS, J., concurring in part; dissenting in part:

I agree with the rule of law announced by the court in its opinion.

I do not agree with the manner in which it is applied in this case. In other words, I do not believe we should sustain the NRCP 41(b) ruling granted in favor of Mori. Instead, we should reverse that ruling and remand the cause for either a full trial or at least a limited hearing on the question of damages under the rule of law announced in this decision.

There is evidence in the record to indicate that Kitchin breached his contract with Mori in failing to process his application for a gaming license to a formal determination. It appears to me that we could sustain the 41(b) ruling to that extent and remand for a limited hearing on damages only.

While the rule of law which allows recovery to a defaulting buyer upon his showing that payments made by him exceed the amount of the seller's damages is not new (see Malmberg v. Baugh, 218 P. 975 (Utah 1923)), still in Nevada it becomes binding precedent for the first time by this decision. A reading of the record in this case clearly indicates that neither counsel nor the court considered the issues here with that rule in mind.

The 41(b) ruling of the trial court, as sustained in this decision, works a forfeiture of Kitchin's $6,850 payments under the contract, and approves retention of both the property and the money by Mori. This harsh result should be avoided, especially when it is reached by a procedural ruling. I would prefer to see a full trial on the merits. It might well be Mori's compensatory damages would either equal or exceed the $6,850 in dispute after evidence from both sides was taken under the rule here announced. Should that be ultimately the decision, at least our judicial conscience would be salved.

In granting a 41(b) motion the trial judge must accept plaintiff's evidence as true, draw all permissible inferences in his favor and not pass upon the credibility of the witnesses nor weigh the evidence. Gordon v. Cal-Neva Lodge, Inc., 71 Nev. 336, 291 P.2d 1054 (1955); Schmidt v. Merriweather, 82 Nev. 372, 418 P.2d 991 (1966); Kline v. Robinson, 83 Nev. 244, 428 P.2d 190 (1967).

There is testimony in the record from Kitchin[1] that he

---

[1]"A.   We went over to Mr. Mori's bookkeeper, Mr. Sirano, I believe his name was, and sat down and discussed the financial condition of the business. Actually I wasn't too concerned about it because the inventory was about $200 more when I came around the premises. It

wanted Mori to give him back part of his money. He testified he offered to settle for $4,000 of the $6,850. The clear inference to be drawn from this testimony is that Kitchin intended that Mori have compensatory damages and he (Kitchin) estimated them to be $2,850. This is enough evidence on compensatory damages adduced by plaintiff in his case-in-chief, in my opinion, to survive a rule 41(b) attack.

Thus the trial judge was obliged to consider the amount of compensatory damages, if any, due Mori resulting from Kitchin's breach of the contract. This was not done because the effect of the lower court's 41(b) rule is to approve either a forfeiture, punitive damages or arbitrarily determined compensatory damages.

There is authority for this handling of the matter. In Malmberg v. Baugh, 218 P. 975 (Utah 1923), at p. 981, the court said, "In view of the fact that all of the parties to the proceeding, including the court, seem to have proceeded upon a wrong theory as to the measure of damages, the court is of opinion that justice can only be done by reversing the judgment and remanding the cause for a new trial, with directions to the trial court to permit the parties, upon their request, to amend their pleadings, so that the case may be tried and determined in accordance with the view herein expressed. It is so ordered." Also in Honey v. Henry's Franchise Leasing Corp. of America, 415 P.2d 833 (Cal. 1966), at p. 836, Justice Traynor said, "In the present case, defendant repossessed some of the property before trial, and it is impossible to determine from the record whether the value of all of the property at the time of the trial was equal to its value at the time of the breach plus any consequential damages that may have been incurred. On retrial the burden will be on plaintiff to prove the excess, if any, of his payments over the amount necessary to give defendant the benefit of his bargain. [Citations.]

"No error appears except in the trial court's determination of the issue of damages. Accordingly, the judgment is reversed

---

exceeded the original inventory. Repair work had been done around there and a few other things. Mr. Mori had his bookkeeper make up a list of things that he felt I owed him an additional six thousand or something like that. This was his reply. * * *

"A. I requested that he give me some money back. Q. Some money. Please be specific. A. I told him at first I would settle out for $4,000 cash, this is my words, and forget about the rest of it and Mr. Mori says, 'Well, you have lost your money.' I said, 'Well, we'll have to just take it to court and let the judge decide it.' "

with directions to retry the issue of damages only and to enter the appropriate judgment."

MOWBRAY, J., concurs in the dissent.