## CIRCUIT COURT OF LOUISA COUNTY

George S. Ferebee
and Joan J. Ferebee

v.

John J. Andre

June 29, 1993

Case No. (Chancery) 4727

BY JUDGE PAUL M. PEATROSS, JR.

This matter comes before the court on a Bill for Specific Performance of a contract for the purchase and sale of real estate. On June 19, 1992, the Buyer, Dr. John J. Andre, contracted to buy a tract of land in Louisa County from the Sellers, George and Joan Ferebee, for the sum of $130,000. The parties agreed that it was to be an all-cash sale, and the date of settlement was set at August 30, 1992. In addition, the contract was to be made expressly contingent on the "buyer obtaining suitable financing." As the court understands it, the wording of this financing condition was proposed by the Buyer and accepted by the Seller.

At the time the contract was entered into, Dr. Andre asserts that it was his intention to obtain $80,000 in a loan from his father, presumably at favorable rates. He also maintains that he intended to finance the remainder of the purchase price at Jefferson National Bank at an interest rate of one over prime. He had apparently discussed the loan arrangement with his father prior to entering into the purchase and sale agreement and had also informally contacted officials at Jefferson National Bank.

After Dr. Andre entered into the purchase and sale agreement, however, his father informed him that he would be unable to extend him the loan. Upon learning this, the evidence indicates that Dr. Andre discontinued his attempts to obtain financing for the Ferebee property and that he was uninterested in alternate financing unless it was for terms substantially similar to those which would have been offered by his father. The evidence also indicates that Dr. Andre subsequently purchased another piece of property which was available for a purchase price of $70,000.

The Ferebees now claim that Dr. Andre failed to perform his obligations under the purchase and sale contract. Specifically, they assert that the financing condition rendering the sale contingent on Dr. Andre obtaining "suitable financing" imposed on Dr. Andre the good-faith obligation to attempt to obtain the required financing through reasonable effort. In their view, the mere fact that Dr. Andre was unable to obtain the expected financing from his father was not, by itself, sufficient to release him from his contractual obligations. As a result, they seek specific performance of the purchase and sales agreement.

In response, Dr. Andre argues that the term "suitable financing" must be read in light of the conditions of the parties at the time of contracting. Apparently, his position is that the specific terms of the father's financial support were made known to the Ferebees at the time of contracting and that the term "suitable financing" should therefore be read in light of those discussions.

In addressing the matter now before the court, the meaning and application of the contractual term "suitable financing" will be critical in determining what duties Dr. Andre owed the Ferebees and whether or not those duties were breached by his failure to seek alternate financing once his father had withdrawn the original offer. In construing a contract provision such as this, the threshold question is whether the terms are ambiguous. *Smith v. Smith*, 3 Va. App. 510, 513 (1986). This is a question of law for the court. *Wilson v. Holyfield*, 227 Va. 184, 187 (1984). An ambiguity exists where the contract language is susceptible to more than one reasonable interpretation. *Amos v. Coffey*, 228 Va. 88, 92 (1984). However, the mere fact that the parties to the contract attribute different meanings to the same term does not imply the existence of an ambiguity where otherwise there is none. *Wilson v. Holyfield*, 227 Va. at 187.

Where there is no ambiguity in the terms of a contract, a court must construe it as written and is not at liberty to search for the meaning of provisions beyond the instrument itself. *Berry v. Klinger*, 225 Va. 201, 208 (1983). If the intent of the parties is evident in the words that they have chosen, the court is bound to give full effect to what the written instrument plainly declares. *Great Falls Hardware Co. v. South Lakes Village Center Associates*, 238 Va. 123, 125–26 (1989).

### Implied Duty of Good Faith

Although the court's research has revealed no reported cases in Virginia addressing the precise language in the instant contract, other jurisdictions have dealt with this issue, and an examination of those cases will prove instructive. In *Aronoff v. Levin Co.*, 618 A.2d 669 (D.C. App. 1992), for example, the District of Columbia Court of Appeals dealt with a case similar to the one now before the court. There, the purchaser had failed to obtain the required financing and was suing the seller for the return of his deposit. The seller defended on the grounds that the purchaser had breached his contractual obligation under the financing clause, which rendered the contract conditional on the purchaser obtaining "suitable financing." The court in that case found that:

> [w]hen a buyer's performance is conditioned on obtaining suitable financing, the buyer has an implied duty to make reasonable efforts to obtain such financing, and failure to do so places her in default.

*Id.* at 682. *See also, Betnar v. Rose*, 536 S.W.2d 719 (Ark. 1976); *Rand v. B.G. Pride Realty*, 350 A.2d 565 (Me. 1976); *Bushmiller v. Schiller*, 368 A.3d 1044 (Md. App. 1977); *Solberg v. Kane*, 536 S.W.2d 885 (Mo. 1976); *Simms Co. v. Wolverton*, 375 P.2d 87 (Or. 1962); *Willeford v. Walker*, 499 S.W.2d 190 (Tex. Civ. App. 1973); *Hanover, Ltd. v. Fields*, 568 P.2d 751 (Utah 1977); *Noah v. Montford*, 463 P.2d 129 (Wash. 1969). Whether a buyer has in fact made good-faith, reasonable efforts to obtain suitable financing is typically a question of fact for the court to determine on a case-by-case basis. *Manning v. Bleifus*, 272 S.E.2d 821 (W. Va. 1980).

An examination of existing case law both in Virginia and in other jurisdictions reveals that there is no consistent rule followed by the courts regarding the sufficiency of a buyer's financing activity. In some

instances. the courts have found a buyer's informal inquiry into financing to be enough, even though no formal loan application was ever made. *Acadia Realty v. Brough*, 393 So. 2d 287 (La. App. 1980); *Management, Inc. v. Mastersons, Inc.*, 616 P.2d 356 (Mont. 1980). However, in such situations, the buyer has typically been informed by the loan officer that no loan would be available and that a formal application would be a waste of time. *See, e.g., Saltzman v. McCombs*, 281 P.2d 394 (Nev. 1955) (Buyers not required to proceed with formal application when told that doing so would be futile).

In the absence of such a declaration by a loan officer, though, it appears that most courts have considered a merely informal inquiry into financing to be insufficient to satisfy the obligations imposed on a real estate purchaser by a "suitable financing" clause in a purchase and sale agreement. *See, Beekay Realty Corp. v. Cayre*, 256 So. 2d 539 (Fla. App. 1972). In fact, courts have routinely found that a single loan application, even if formally made, may not be sufficient to satisfy the buyer's duty of reasonable effort. *Grossman v. Melinda Lowell*, 703 F. Supp. 282 (S.D. N.Y. 1989); *Schollian v. Ullo*, 558 So. 2d 776 (La. App. 1990); *Phillipe v. Thomas*, 489 A.2d 1056 (Conn. 1985); *Martin v. Dillon*, 641 P.2d 1209 (Or. App. 1982); *Manning v. Bleifus*, 272 S.E.2d 821 (W. Va. 1980). In order to satisfy the important duties of good faith and fair dealing, more diligent efforts are usually required from the buyer.

In the case now before the court, the facts would seem to indicate that the Buyer, Dr. Andre, failed to live up to those duties. Not only did Dr. Andre fail to make the multiple loan inquiries typically required in such situations, but the evidence presented to the court clearly demonstrates that Dr. Andre made no formal loan applications to any bank at all. The extent of his efforts appears to have been limited to discussions with his father regarding a low-rate intra-family loan, and an informal meeting with an officer from Jefferson National Bank, which apparently took place during a racquetball game. Dr. Andre has not claimed that the loan officer told him that a loan from Jefferson National would not be forthcoming, nor has he presented any evidence of discussions with other banks which would lead him to believe that formal applications would be unavailing. Instead, the facts of this case indicate that Dr. Andre gave up trying to finance the purchase of the Ferebee property as soon as his father's loan fell through.

While this would seem to indicate that his failure to seek further financing was a breach of contract, Dr. Andre takes the position that the reasonable-efforts requirement must be read in light of the type of financing identified in his specific contract with the Ferebees. In particular, Dr. Andre asserts that the term "suitable financing" means, in his case, financing comparable to that which would have been obtainable from his father, had that loan not failed. Since no such financing would have been available, no matter how hard he had looked, Dr. Andre argues that his attempts at financing, meager as they were, were in fact reasonable in light of the circumstances.

### Suitable Financing

Based on the language used in the instant contract, the court must reject this analysis. It is true that the term "suitable financing" is not capable of precise definition on its face. However, the court interprets the phrase to mean financing that is basically reasonable in light of the circumstances of the parties. There appear to be no Virginia cases on point, but the Connecticut Supreme Court had an opportunity to apply a "suitable financing" condition from a real estate purchase and sale agreement in *Lach v. Cahill*, 85 A.2d 481 (Conn. 1951). In that case, the purchaser sought the return of his deposit after he failed to obtain the required financing, and the seller claimed in defense that the purchaser's failure to obtain financing constituted a breach of his contractual obligations. The critical issue in that case was the same as the point now raised by Dr. Andre; namely, what exactly is "suitable financing?" The purchaser in *Lach* was a young lawyer who had just begun his practice. As a result, he had little money or financial resources to purchase a home. The court in *Lach* took note of these circumstances when it interpreted the "suitable financing" condition and found that the phrase meant, in that particular purchaser's case, that he should not be held to the purchase agreement unless he could secure a mortgage for the purchase price "on reasonable terms as to the amount and time of installment payments." *Id.* at 482.

Similarly, in the case now before the court, the term "suitable financing" must mean those financing terms which are reasonable in light of both Dr. Andre's financial position and the Ferebee's reasonable expectations. Dr. Andre would apparently ask the court to interpret this phrase to mean "low-rate" or "zero-rate" financing, which is what he would theoretically have been able to get from his father. The

court declines to do so. If Dr. Andre had intended the purchase agreement to be contingent on his obtaining such a loan from his father, he could have said so in the contract. Instead, he bound himself to make reasonable efforts to secure "suitable financing," from no identified source in particular. There has been insufficient evidence presented to allow the court to determine exactly what would be a reasonable rate of financing in this case, but it is fairly certain that it would not be *unreasonable* to require Dr. Andre to pay the fair-market rate of interest available at the time of the contract. As noted previously, Dr. Andre made absolutely no effort to obtain alternate financing in this case, however, and his failure to do so constitutes a breach.

### Specific Performance

Under Virginia law, both the purchaser and vendor in a contract for the purchase and sale of real estate are entitled to the remedy of specific performance for a breach. *Yamada v. McLeod*, 243 Va. 426 (1992). This serves two important purposes, since it affords the vendor a complete remedy, while at the same time complying with the principle of mutuality that compels a court of equity to extend the potential benefits of any remedy equally to both sides. *Id.* at 433. Accordingly, this court grants Mr. and Mrs. Ferebee the remedy of specific performance and directs Dr. Andre to comply with the terms of the purchase and sale agreement.